JOHN H. PERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32748.   Promulgated February 2, 1931.

*Louis P. Eisner, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

18

OPINION.

SMITH: ■ Petitioner alleges that the respondent erred, (a) in not allowing the deduction in 1923 of a bad debt of $59,975 due from the Reading Times Publishing Company, and (b) in not allowing as a deduction in 1924 a bad debt of $123,511 due from the Reading Times Publishing Company. The applicable statute is section 214(a) of the Revenue Act of 1921, which provides in part that in computing net income there shall be allowed as deductions:

(7) Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

Article 151 of Regulations 62, promulgated under the provisions of the Revenue Act of 1921, provides in part:

Where all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. There should accompany the return a statement showing the propriety of any deduction claimed for bad debts. * * *

The evidence adduced to prove the worthlessness of the debt of the Reading Times Publishing Company to the petitioner is voluminous.

In 1922 the city of Reading, Pa., appeared to offer a good field for the publication of a newspaper. The petitioner had had much experience in newspaper work and in the purchase and sale of newspapers and believed that he could make a success of the publication of the Reading Times. He, with his associate, was willing to assume,

and did assume, an indebtedness of the Reading Times Publishing Company of $160,000 for the assets which that company had, the principal one of which was the good will that attached to the name of the Reading Times. As soon as he took hold of the enterprise a rival newspaper was established in Reading which succeeded in getting most of the advertising in Reading. The assets of the Reading Times Publishing Company aside from the good will which attached to the name of the Reading Times, had but little value at the close of 1923 or 1924. The real estate owned by it was acquired for $38,000 of its bonds, and competent witnesses testified that the machinery was not worth more than about $5,000. The petitioner saw that he had a losing proposition on his hands soon after the rival newspaper was started. In a vain hope that he might eventually be able to dispose of the newspaper by finding a responsible purchaser who would assume the bonds of that company, he continued to advance money to the Publishing Company to enable it to carry on. The evidence establishes beyond a shadow of a doubt that the petitioner's claims against the Publishing Company were worthless at the close of both 1923 and 1924.

The statute permits the deduction of debts ascertained to be worthless and charged off within the year. The question before us is whether there was a charge-off which complies with the statute. The petitioner instructed his secretary to claim the amounts as debts ascertained to be worthless and charged off within the year. The secretary assumed that he was doing all that was necessary to comply with the statute. No books of account as such were kept by the petitioner. In *H. E. Newton*, 7 B. T. A. 1153, we said:

It was manifestly the intention of Congress to permit an individual making income-tax returns under the Revenue Act of 1921 to deduct from gross income the losses sustained in the return year and also to permit him to deduct debts ascertained to be worthless during the year, provided, of course, the amount was charged off during the year. Since the petitioners kept no books of account the requirement that the bad debts be charged off before they can be claimed as a deduction does not apply to them. * * *

To the same effect see *Sumter Coca-Cola Bottling Co.*, 7 B. T. A. 890; *Robert Mitten*, 11 B. T. A. 731. In *George H. Fraser*, 6 B. T. A. 997, we stated:

* * * The statute is silent as to how or where or in what manner they [the debts] are to be charged off. If no books are kept, where is the charge-off to be made? If books are kept, must it be done by an entry on the books? Here it is conceded that books were kept and that no charge-off was made thereon until 1924 when the entry was made as of 1919. * * *

* * * The statute must be given a reasonable interpretation, if possible. Clearly it was the intent that a deduction should be allowed for worthless debts in the year in which worthlessness was ascertained and that the charging off of the debt might take other forms than entries on the books of the taxpayer. * * *

In *Jones* v. *Commissioner of Internal Revenue*, 38 Fed. (2d) 550, the Court stated:

The remaining question is whether or not decedent complied with that part of the statute which requires the debt to be charged off within the taxable year. It is undisputed that decedent kept no books of account except his bank book, and for this reason no formal book entry of charge off was necessary. *Appeal of Huning Mercantile Co.*, 1 B. T. A. 130; *Appeal of Collin*, 1 B. T. A. 305; *Appeal of United States Tool Co.*, 3 B. T. A. 492; *Robert Mitten* v. *Commissioner*, 11 B. T. A. 731. "The mechanical process of keeping accounts is not prescribed by statute. Such accounts may be recorded in an elaborate set of books, or in mere memoranda, or be recorded only in the brain of the taxpayer. It can make no difference as to the form of such operation." This language was used by the Board in the *Appeal of Collin, supra,* and we commend its reasonableness and fairness.

The evidence indicates very clearly that it was the intention of the petitioner through instructions to his secretary that the amounts in question be claimed upon the return as bad debt deductions. They were claimed as deductions and we think it is immaterial in the circumstances of the case that they were shown as losses rather than as bad debt deductions. The manner of the charge-off is not of the essence.

It is to be noted that the petitioner claims bad debt deductions for 1923 and 1924 of $59,975 and $123,511, respectively. The only charge-off, however, that could possibly be recognized is the charge-off made on the tax returns and the amounts shown on the tax returns were $54,738.15 for 1923, and $96,374.19 for 1924. We are of the opinion that the latter amounts are the debts ascertained to be worthless and charged off during the years within the meaning of the statute and are the amounts deductible from gross income for the years 1923 and 1924.

■ The petitioner's contention that the profits from the sale of shares of stock in 1921 attributable to the years 1923 and 1924, computed upon the installment sales basis, are taxable at the lower rates as capital gains is denied. Sections 206(a)(1) of the 1921 Act and 208(a)(1) of the 1924 Act provide:

(a) That for the purposes of this title:
(1) The term "capital gain" means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

The respondent interprets this section of the Act as requiring the *sale* to have been consummated after December 31, 1921, and has found that the sale of the shares of stock in the instant case was consummated prior to December 31, 1921. The petitioner contends (1) that the words "consummated after December 31, 1921" modify "taxable gain" rather than the word "sale," and (2) that the sale here was not consummated until delivery of the shares of stock to the purchaser, which occurred subsequent to December 31, 1921.

Neither of these arguments, we think, merits lengthy discussion. The respondent's construction of the statute, we think, not only preserves the syntax, but gives to the words of the statute their natural and reasonable meaning. As defined in Webster's New International Dictionary, to "consummate" means "To bring to completion; to raise to the highest point or degree; to complete; finish; perfect; achieve." Certainly, these words more naturally and more appropriately relate to the event of the "sale," which can be given a definite date, than to the "taxable gain," which in point of time might extend, as in the instant case, over a period of years. "Earned" and "accrued" are the words usually employed in the taxing statutes to denote the occurrence of gains and profits. The sale here unquestionably was consummated on September 8, 1921, when the contract of sale was definitely closed and the shares of stock delivered over to the trustee or escrow agent. The petitioner was then divested of both equitable and legal title to the property. As for his part, there was nothing more to be done in performance of the contract and the sale was complete and final. We think that the sale was "consummated" within the meaning of the statute prior to December 31, 1921, and that the profits therefrom are not taxable as capital gains.

■ Upon the remaining issue the respondent is sustained. The petitioner and his wife having elected to file a joint return for each of the years 1923 and 1924 are now precluded from having their tax liability for those years computed upon the basis of separate returns. *R. Downes, Jr.*, 5 B. T. A. 1029; *William A. Buttolph*, 7 B. T. A. 310; affirmed in *Buttolph* v. *Commissioner of Internal Revenue*, 29 Fed. (2d) 695; *Grant* v. *Rose*, 24 Fed. (2d) 115. The fact that the joint returns under consideration here showed no taxable income or that the petitioner filed joint returns under a mistaken conception of his rights does not alter the rule.

*Judgment will be entered under Rule 50.*