Muriel HEIM, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15835.

United States Court of Appeals
Eighth Circuit.

Jan. 17, 1958.

Fred Sorenson, Kansas City, Mo., for petitioner.

Louise Foster, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Carolyn R. Just, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and HARPER, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Muriel Heim has petitioned this court to review the decision and order of the Tax Court [1] determining that she filed a joint income tax return with her husband for the year 1951, and that by reason thereof she is liable for a tax deficiency in the amount of $2,977.44 upon unreported income of her husband for said year. It is admitted that Muriel Heim did not personally sign the joint income tax return, although such fact was not known to the Commissioner when he received the return. The Tax Court upheld the Commissioner's contention that Muriel Heim acquiesced in and gave her tacit consent to the filing of a joint return with her husband, Dr. Russell R. Heim, for the year 1951. The primary issue for our determination is whether the decision of the Tax Court is supported by substantial evidence.[2]

Mrs. Heim does not dispute the fact that section 51(b) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 51(b), imposes joint and several liability upon both husband and wife for any tax due upon their aggregate income. Her position is that she filed no joint return for 1951.

There can be a binding joint return even though one of the spouses failed to sign the return. Kann v. Commissioner, 3 Cir., 210 F.2d 247, 251; Howell v. Commissioner, 6 Cir., 175 F.2d 240, 241; Lane v. Commissioner, 26 T.C. 405, 408; Stone v. Commissioner, 22 T.C. 893, 901.

In the Howell case, supra, one of the returns was not signed by the wife. In affirming the Tax Court's decision imposing tax liability upon the wife, the court states (175 F.2d at page 241):

"* * * The Tax Court, citing a former Tax Court opinion, held that where a husband files a joint return without objection of the wife, who fails to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife. * * *"

In the Kann case, supra, it is said (210 F.2d at pages 251–252):

"There is likewise no merit to the argument of petitioners W. L. Kann and Stella H. Kann that they did not file a joint return for the years 1937 and 1938. Their contention is based on the fact that the wife did not sign the return nor was a power of attorney authorizing the husband to sign as agent for his wife included with the return for those years, as required by the applicable regulations. We agree with respondent that the latter are not mandatory but merely set forth a method of compliance and may be waived by the Commissioner. In this respect it is pertinent to note that Stella H. Kann was not called to testify and W. L. Kann did not while testifying contend that he signed the returns for his wife without her consent. Under the circumstances, the Tax Court having found as a fact that joint returns were filed we cannot say that this

1. Opinion reported 27 T.C. 270.

2. The Commissioner in the Tax Court sought to impose a 50 per cent fraud penalty upon the tax due. The Tax

Court refused to impose the fraud penalty. The Commissioner has not appealed from such determination.

determination was clearly erroneous."

In her brief petitioner states, "Petitioner agrees with cases cited in the Tax Court opinion, which hold that a wife may be liable though she does not actually sign a joint return".

■ The petitioner, however, contends that whether or not a joint return has been filed is a factual question, the answer to which rests upon a determination of the intent of the taxpayer. The courts have so held. Payne v. United States, 8 Cir., 247 F.2d 481, 484; McCord v. Granger, 3 Cir., 201 F.2d 103; Bour v. Commissioner, 23 T.C. 237, 239; Calhoun v. Commissioner, 23 T.C. 4.

We look to the facts for such light as they may shed upon the petitioner's intention to file a joint return.

Muriel Heim married Russell R. Heim in 1949. They have lived together at all times material hereto. Russell was a physician engaged in the practice of medicine and also was county coroner. Salisbury, an accountant, prepared Russell's income tax returns from 1942 through 1952.

Mrs. Heim prepared and filed her own individual returns for the years 1949 and 1950, filing them in her maiden name because of her husband's desire to keep the marriage a secret for political reasons. She also filed a separate return in 1952. Mrs. Heim filed no separate return in 1951. A joint return for 1951 headed "Dr. Russell R. and Muriel Heim" was filed. It was signed by Russell. Salisbury, at Dr. Heim's direction, wrote in the name of Muriel Heim on the signature line of the return designated for the spouse.

Muriel Heim was employed as a social worker for Hennepin County. Her 1951 salary of $4,095.22 and the tax withheld therefrom of $627.20 were listed on the return, as was the income of her husband. Deductions and exemptions were claimed for Dr. and Mrs. Heim. Tax was computed on a joint return basis and a refund of $813.94 was requested, the return disclosing that the tax withheld exceeded the tax due by that amount. Dr. Heim had offered to have his accountant take care of his wife's income tax return. Pursuant to such offer, Mrs. Heim gave her husband her tax withholding statement and other tax information which Dr. Heim gave to his accountant, Salisbury. The 1951 tax return on its face had all the appearances of a joint return and was so treated by the Commissioner.

A refund was made upon the 1951 joint tax return. A Government check was issued on June 16, 1952, in the amount of $946.23 payable to Russell R. and M. Heim and marked tax refund, and such check was received by Dr. Heim shortly thereafter. At Dr. Heim's request Mrs. Heim endorsed the check and Dr. Heim received the proceeds. Mrs. Heim knew when she endorsed the check that it was a Government check issued for a refund of taxes. In November 1952 Dr. Heim was convicted of narcotics violations and sentenced to a prison term. Mrs. Heim received notice of tax deficiency in August 1954, said deficiency being based largely upon unreported professional income of Dr. Heim.

The facts heretofore stated are undisputed. There is a conflict in testimony upon the issue of Mrs. Heim's knowledge that she was filing a joint return for 1951 and her authorization of such a return. Mrs. Heim concedes that she agreed that Salisbury should take care of her 1951 tax return. She testified that she phoned Salisbury on March 15, 1952, about signing the return, and that she was then advised by Salisbury that he had signed the return for her and had sent it in. Mrs. Heim did not inquire and was not told at that time whether the return was joint or separate. She states that she did not authorize a joint return and did not learn that a joint return for 1951 had been filed prior to the fall of 1953. Salisbury, on the other hand, testified that Dr. Heim advised him that a joint return was desired, and that before preparing the return he called Mrs. Heim for additional tax information and that in the course of the conversation he

congratulated her upon deciding to file a joint return, and said that it was a good thing that Dr. Heim had "woke up" and was ready to file a joint return the way normal people do, and that Mrs. Heim had made no protest. Mrs. Heim admits the conversation with Salisbury in which additional tax information was sought, but denies that there was any discussion about a joint return. Salisbury also testified that he prepared Mrs. Heim's separate return for 1952, and that he then recommended that because of Dr. Heim's criminal difficulties the return be a separate one, and that Mrs. Heim responded, "No more joint returns in the Heim family." The 1952 return filed by Mrs. Heim answers the question about filing a return for the previous year with the words "Joint Return." Mrs. Heim states that this answer was not called to her attention or discussed with her.

■ The Tax Court after a full consideration of all the evidence states:

"It is only fair to conclude from all of the evidence in this case that the petitioner acquiesced in and gave her tacit consent to the filing of the joint return for 1951."

We are satisfied that there is substantial evidence in the record to support such a conclusion.

■ There is no evidence in the record to indicate that either Mrs. Heim or Salisbury knew at the time the 1951 joint return was filed that Dr. Heim had failed to disclose all of his income. Upon the basis of the return prepared, it appeared to be beneficial from a tax-saving standpoint for the Heims to file a joint return. No reason appears why Mrs. Heim should have been unwilling to file a joint return for 1951. The 1949 and 1950 returns of Mrs. Heim were individual returns, but were so made at Dr. Heim's request. There is no evidence that Mrs. Heim, prior to Dr. Heim's criminal involvement, ever voiced to her husband or to Salisbury or to anyone else any objection to making a joint return. By this we do not mean to say that a

spouse must assign a valid reason for refusing to join in a return. Each spouse has a free choice to decide whether or not to file a joint return. However, the lack of a reason for a refusal to file a joint return, the absence of objection, the delivery of the tax data to the husband for the purpose of making the tax return, and the apparent advantage in filing a joint return are factors to be considered in determining intent. Mrs. Heim did not specifically testify that she refused to participate in a joint return, or that she informed either her husband or Salisbury that she insisted upon making an individual return.

Moreover, Salisbury's testimony that Mrs. Heim knew that a joint return was to be filed is supported by the undisputed evidence that a substantial refund was made to her and Dr. Heim jointly on their 1951 tax, and also by the statement over her signature in her 1952 return that a joint return had been filed for the previous year.

The Tax Court's finding that Mrs. Heim acquiesced in and gave tacit consent to the filing of a joint return for 1951 is not clearly erroneous.

■ Petitioner, without citing authority, complains that the Tax Court has refused to respect and accept the findings of the trial judge. It appears from the dissenting opinions of Judge Opper and Judge Fisher that Judge Opper was the trial judge who heard the evidence. The opinion of the court is written by Judge Murdock.

Section 7444, Internal Revenue Code of 1954, 26 U.S.C.A. § 7444, authorizes the chief judge of the Tax Court to divide the Tax Court into divisions of one or more judges. Section 7458 provides for a hearing before a division, and further provides that neither party to a tax controversy shall be heard before the Tax Court upon review except upon special order of the chief judge. Section 7460(a) provides for a hearing and determination by a division and for report of any determination which constitutes

a final disposition of the proceeding. Section 7460(b) provides:

"(b) *Effect of action by a division.*—The report of the division shall become the report of the Tax Court within 30 days after such report by the division, unless within such period the chief judge has directed that such report shall be reviewed by the Tax Court. Any preliminary action by a division which does not form the basis for the entry of the final decision shall not be subject to review by the Tax Court except in accordance with such rules as the Tax Court may prescribe. The report of a division shall not be a part of the record in any case in which the chief judge directs that such report shall be reviewed by the Tax Court."

This section is substantially the same as section 1118 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1118.

The record before us does not contain any report of findings of Judge Opper other than those which appear in his dissent. This is doubtless because of the provisions of section 7460(b) to the effect that the report of a division shall not be part of the record.

Mrs. Heim's present contention is fully answered by Powell v. Commissioner, 1 Cir., 94 F.2d 483. There, as here, the record showed only that the judge constituting the division hearing the evidence dissented. The taxpayer urged that the Board (now the Tax Court) could not reject the division's decision unless it was clearly erroneous. In rejecting this contention the court states (at page 486):

"The determination and report of Mr. Smith, as a division of the Board, not being a part of the record in the case, as the law required that it be excluded therefrom, we are not at liberty to infer what his determination and report was.

" * * * The exclusion from the record of the determination and report of a division when a review is

directed by the chairman was evidently inserted by Congress in the statute to prevent the raising of just such a question as is here sought to be raised by the petitioner."

It is not reversible error for a judge other than the one who heard the evidence to write the opinion and decision of the Tax Court. Halle v. Commissioner, 2 Cir., 175 F.2d 500, 504; See also Seaside Improvement Co. v. Commissioner, 2 Cir., 105 F.2d 990, 992; Davidson v. Commissioner, 5 Cir., 91 F.2d 516, 518; Garden City Feeder Co. v. Commissioner, 8 Cir., 75 F.2d 804.

Doubtless the Tax Court should give consideration to the findings of the division that heard the evidence. However, it seems clear that the Tax Court is not bound by the opinion and findings of the division. That this was the congressional intention is emphasized by the statutory provision above quoted that the report of the division shall not be a part of the record. In Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, the Court discusses the consideration to be given by the Labor Board to the report of the trial examiner. The Court there found that under the applicable statutes the report of the examiner was part of the record to be considered by the Board. Even under such circumstances the Court determined that the Board was not bound by the decision of the trial examiner, stating (340 U.S. at pages 492, 497, 71 S.Ct. at pages 467–469):

"The responsibility for decision thus placed on the Board is wholly inconsistent with the notion that it has power to reverse an examiner's findings only when they are 'clearly erroneous.' Such a limitation would make so drastic a departure from prior administrative practice that explicitness would be required."

" * * * On reconsideration of the record it should accord the findings of the trial examiner the relevance that they reasonably command in answering the compᵣᵉhen-

sive question whether the evidence supporting the Board's order is substantial. * * * "

In our present case the responsibility for the evaluation of the evidence is placed upon the Tax Court. We are satisfied that there is substantial evidence to support the court's conclusion.

The decision of the Tax Court is affirmed.