MATTHEW L. LADDEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90125.    Filed July 27, 1962.

*Milton G. Harrison, CPA,* and *Martin Kingsley, Esq.,* for the petitioner.

*Chapman H. Belew, Jr., Esq.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $2,359.82 in the income tax of petitioner for the year 1955.

The issue presented for our decision is whether the 1955 return filed by petitioner may be considered a joint return so as to enable petitioner to compute his tax liability in accordance with the provisions of section 2, I.R.C. 1954. Dependent upon this issue is the question whether petitioner is entitled to a personal exemption for his wife under section 151.[1]

#### FINDINGS OF FACT.

Matthew L. Ladden (hereinafter referred to as petitioner) and his wife, June Ladden (hereinafter referred to as June), were married sometime prior to 1955.

---

[1] Unless otherwise noted, all Code references are to the Internal Revenue Code of 1954.

At all times here pertinent, petitioner was an executive officer of several corporations located in Irvington, New Jersey. He was also sole shareholder of these corporations. June had been on the payroll of at least one of these corporations since 1946, starting out as a stenographer-office girl and eventually achieving an executive capacity. In 1955 she was on the payroll of Blue Seal Asbestos Corporation.

Sometime prior to June 1955, marital difficulties arose between petitioner and June. Petitioner and June separated in June 1955, at which time petitioner left their marital home.

June's employment with petitioner's asbestos corporation also terminated in June 1955. Her regular 1954 and 1955 salary had been $200 per week and thus in 1955 she earned $4,400. June had no other income in 1955 and petitioner knew this fact.

After the above termination of employment, June returned to work for petitioner's corporation only once, for a period of about 4 weeks in August 1956.

On or about April 6, 1956, petitioner filed a Federal income tax return which he had signed on April 4, 1956, with the district director of internal revenue, Newark, New Jersey. It bore the names "Matthew L. Ladden and June Ladden" but was signed by petitioner only. It included all the income, deductions, and credits of both petitioner and June and computed petitioner's tax liability under the rates applicable to joint returns pursuant to section 2.

On or about April 14, 1956, June filed with the same district director a Form 1040 bearing her name alone, signed by her alone on April 9, 1956, but containing no figures whatsoever. The "return" was labeled "tentative" and attached thereto was a letter in June's own handwriting which read:

CANFIELD ROAD
CONVENT, NEW JERSEY
*April 9, 1956*

Internal Revenue Department
*Federal Building*
*Newark, New Jersey*
Gentlemen:

I was employed by Ladden Asbestos Corporation of New Jersey, 16 Cordier Street, Irvington, New Jersey for the months of January, February, March and April, 1955.

I never received a W-2 form and, therefore, cannot complete my income tax return.

Your cooperation in helping me to obtain this W-2 form would be greatly appreciated.

Very truly yours,

(s) (Mrs.) June Ladden

The district director thereupon granted June an extension until June 15, 1956; however, such return was not then filed, but on June

14, 1956, June sent the following letter to the Internal Revenue Service:

CANFIELD ROAD
CONVENT, NEW JERSEY
*June 14, 1956*

Internal Revenue Service
*District Director*
*Post Office Building*
*Newark 2, N.J.*

Code 3211
FL 3-2 MCC

Gentlemen:

Thank you for the extension to 6/15/56 to file my income tax return for 1955. However, it is still impossible for me to do so, never having received the W-2 form from Ladden Asbestos Corporation of New Jersey, 16 Cordier Street, Irvington, N.J.

My attorney requested this W-2 form, to which there was no response.

Would you please advise me what action to take now?

Thank you.

Very truly yours,

(s) (Mrs.) June Ladden

In March 1956, June had been awarded separate maintenance from petitioner, pending the outcome of a divorce proceeding then recently instituted. A final divorce was granted in November 1961. During the proceedings for separate maintenance, June's attorneys subpoenaed petitioner's various income tax returns in order to learn petitioner's earnings. In early December 1956, petitioner's attorneys filed answers to further interrogations by June's attorneys; attached to such answers was a copy of petitioner's 1955 return described above.

On some date in 1956, prior to October 29, 1956, June learned that petitioner had filed a 1955 return which purported to be the joint return of June and petitioner.

On December 7, 1956, the district director, Newark, New Jersey, wrote the following letter to June:

U.S. TREASURY DEPARTMENT
Internal Revenue Service
*District Director*
Industrial Office Building
*1060 Broad Street*
*Newark, New Jersey*

In reply refer to:
Code 3232
FL 3-201

*December 7, 1956*

Mrs. June Ladden
*Canfield Road*
*Convent, N.J.*

Form: 1040
Year: 1955

You were granted an extension of time to file your income tax return for the above year. However, we do not have a record of receiving the return in

this office. Please furnish the information requested on the reverse of this letter and return to this office WITHIN TEN DAYS.

Very truly yours,

(s) Joseph F. J. Mayer
*District Director*

June's undated answer was received by said district director on December 19, 1956, and in addition to answering identifying questions, stated:

On October 29, 1956, I wrote you a letter, referring to Code 3211 FL 3–MCC 196, advising that my husband, Matthew L. Ladden, from whom I have been separated for approximately 1½ years, and who is the president of Ladden Asbestos Corporation of New Jersey, advised me that he incorporated my salary for the year 1955 with his, and that he filed a return and paid a tax on same.

(s) June Ladden

Thereafter, on or about August 28, 1959, June filed a Form 1040 with the district director, Newark, New Jersey, which she apparently then intended to be her final separate 1955 return. Such return form reported salary of $4,400, claimed as a credit $1,280 Federal income tax withheld, and requested refund of $963.

### OPINION.

Manifestly, at the time of the filing of the purported joint return dated April 4, 1956, by petitioner, June did not intend it to be a joint return and we do not understand petitioner to argue to the contrary. As respondent points out, June's tentative return, dated 5 days later, evidences her intention *as of that time* to file a separate rather than a joint return. However, section 6013(b)[2] clearly provides that either spouse may elect to file a joint return even after having filed a separate return.

In *Vincent S. Hennen*, 35 T.C. 747 (1961), we said at page 748:

The fact that one spouse fails to sign the return is not always fatal to the finding of a joint return. *Muriel Heim*, 27 T.C. 270 (1956), affd. 251 F. 2d 44 (C.A. 8, 1958). The determinative factor is whether the spouses intended to file a joint return, their signatures being but indicative of such intent. *Hyman B. Stone*, 22 T.C. 893 (1954), appeal dismissed. This intent may be inferred from the acquiescence of the nonsigning spouse. * * *

And in *Heim* v. *Commissioner*, 251 F. 2d 44 (C.A. 8, 1958), affirming 27 T.C. 270, the court stated at page 46:

That petitioner, however, contends that whether or not a joint return has been filed is a factual question, the answer to which rests upon a determination of the intent of the taxpayer. The courts have so held. Payne v. United States,

---

[2] SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

  (b) JOINT RETURN AFTER FILING SEPARATE RETURN.—

   (1) IN GENERAL.—[With exceptions not here relevant] * * * if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse * * * and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. * * *

8 Cir., 247 F. 2d 481, 484; McCord v. Granger, 3 Cir., 201 F. 2d 103; Bour v. Commissioner, 23 T.C. 237, 239; Calhoun v. Commissioner, 23 T.C. 4.

Thus the question to be decided by us is factual—did June, subsequent to April 1956, manifest an intention to file a joint return? We think the conclusion that she did is inescapable.

June's communications to the district director, one dated June 14, 1956, and the other received by him on December 19, 1956, have been quoted in full, *supra.* The latter was written after June had learned of petitioner's purported joint return of April 4, 1956, and after a copy of said return had been furnished to her attorneys. It is but a statement of the obvious to say that this communication amounted to a final termination of the entire matter insofar as June was concerned—she had accepted and ratified petitioner's joint return.

Respondent was not able to, or at least did not produce June's letter of October 29, 1956, even though it was subpoenaed by petitioner. We are thus denied June's exact wording, but it had been exhibited to petitioner's attorney who testified that it unequivocally expressed June's assent to the joint return. We find this testimony eminently trustworthy.

There remains the question of the legal effect of June's action in filing a return purporting to be a separate return in 1959. Prior to 1951, the settled law was that, after the prescribed time for filing returns had expired, the election to file joint returns was irrevocable, *R. Downes, Jr.*, 5 B.T.A. 1029 (1927); *John H. Perry*, 22 B.T.A. 13, 21 (1931), as was the election to file a separate return. *Desio Barbetti*, 9 T.C. 1097 (1947). In 1951, Congress enacted section 312 of the Revenue Act of 1951 (section 51(g) of the 1939 Code) which is in substance similar to section 6013(b) of the 1954 Code (see footnote 2). Thus, Congress for the first time specifically permitted the revocation of an election to file separate returns. At the same time Congress made no change regarding the irrevocability of the election to file joint returns. Congress was aware of the existing law regarding irrevocability of the election to file either separate or joint returns. S. Rept. No. 781 (part 2), 82d Cong., 1st Sess., p. 25 (1951); Summary of the Provisions of the Revenue Act of 1951, Staff of the Joint Committee on Internal Revenue Taxation, p. 25. The inference is persuasive that Congress did not intend to change the law with respect to the irrevocability of the election to file joint returns. We so hold.[3]

It follows that June's attempted revocation on or about August 28, 1959, of her election to file a joint return is ineffective and that petitioner is thus deemed to have filed a joint return and is entitled to compute his tax liability on the basis of joint return rates under sec-

[3] This view is in accord with section 1.6013–1(a)(1), Income Tax Regs., which provides: "For any taxable year with respect to which a joint return has been filed, separate returns shall not be made by the spouses after the time for filing the return of either has expired."

tion 2. Inasmuch as both petitioner and June are thus considered to be the taxpayers, it follows that respondent was in error in disallowing a personal exemption for June.

*Decision will be entered for the petitioner.*