**Sidney L. GAYNES, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 71-2768

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1972.

Edwin M. Sigel, Dallas, Tex., for plaintiff-appellant.

Anthony J. P. Farris, U. S. Atty., William L. Bowers, Jr., Houston, Tex., Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellee.

---

* ▆ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

PER CURIAM:

The sole issue on this appeal is whether the taxpayer, Sidney L. Gaynes, validly executed a waiver of his right to contest the amount of his tax liability when he signed Form 870-AD.[1] Gaynes offers two reasons in support of his contention that the Form 870-AD was not validly executed. First, he says he was induced to sign the form through the misrepresentations of the responsible government agent. Second, Gaynes says that the waiver related to tax years for which he had filed a joint return, and that the signature of his wife at that time was required for valid execution of the waiver.

The district court, however, found that Gaynes "voluntarily, of his own free will, executed Form 870-AD and that when he did, he had been fully advised of its legal effect and he knew what he was doing". The district court also found that Gaynes's wife in 1959 and 1960 did not intend to file joint tax returns,[2] that Gaynes and his wife had not filed joint tax returns,[3] and consequently that it was unnecessary for Gaynes's wife to sign the Form 870-AD

---

1. Form 870-AD is styled an "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment". By executing Form 870-AD, the taxpayer waives the right given him under Section 6213(a) of the Internal Revenue Code not to have a deficiency assessed against him for income taxes unpaid until a notice of deficiency is mailed to the taxpayer and the time for petitioning the Tax Court has expired or the Tax Court proceedings have been concluded. Under the terms of the form, the Internal Revenue Service is prevented from claiming any further deficiencies for the years involved "in the absence of fraud, malfeasance, concealment or misrepresentation of material fact [or] an important mistake in mathematical calculations". In addition, the Form protects the taxpayer against the continued running of interest. See 9 Mertens, Law of Federal Income Taxation (Rev.), § 49.139. The taxpayer may not withdraw his Form 870-AD waiver after it has been acted upon by the Internal Revenue Service District Director. Treas. Reg. on Proc. and Admin. § 301.6213-1 (d).

2. The taxpayer signed his former wife's name, Rebecca Gaynes, to the 1959 return. But Mrs. Gaynes's deposition gave ample reason for the district judge to conclude that she had not impliedly consented to her husband's signature on her behalf, and that it was therefore ineffective. In responding to the questions of whether she signed and filed a joint return for the year 1959, her testimony was as follows:
   A. No I did not. In the year 1959 or for the year 1959.
   Q. For the year 1959?
   A. No. In 1960, February and March, he showed me a form—

Q. "He" is who?
A. Sidney showed me a blank income tax form and said, "here,—sign it". I said, "Of course not". He said, "If not, I will break your head open and smash your face in * * *"
Q. Did you ever sign, in blank or otherwise, a 1959 income tax return?
A. No, I never did sign it.
   Rebecca Gaynes did sign the 1960 return, but in her deposition she testified that Sidney Gaynes had threatened her with physical harm if she did not sign the return. She recounted the events of April 16, 1961:
   * * * I [was] aware that that was the last permissible day for someone to sign an income tax return that year— it was a day of terror. It started as early as we got up in the morning and proceeded all day long.
   "You sign it or I will break your head open. You sign it or I will smash your face in or I will kill you. You sign it or I will kill you."
Describing the moment when she actually signed her name on the return, Rebecca Gaynes testified:
   And while my husband and Millie together stood outside * * * I opened the door just a crack, still keeping the door on the chain, just enough so he could shove the tax return in to me just about two inches, just enough to obtain my signature on the bottom line; and as soon as he obtained this signature he pulled it right back and said, "Now I've got you * * *"

3. Whether income tax returns are joint is a factual issue of the intention of the parties, Sullivan v. Commissioner of Internal Revenue, 5 Cir. 1958, 256 F.2d 4; Heim v. Commissioner of Internal Revenue, C.A. 8, 1958, 251 F.2d 44.

waiver. Because there is firm support in the record for both the factual conclusions, the findings of the district court were not clearly erroneous, and the judgment of the district court based upon those findings is affirmed.