RONALD R. SILVERTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent RONALD R. SILVERTON and B. SILVERTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Silverton v. Commissioner
Docket Nos. 8905-72, 8906-72, 8907-72, 7799-75.
United States Tax Court
T.C. Memo 1978-433; 1978 Tax Ct. Memo LEXIS 81; 37 T.C.M. (CCH) 1797; T.C.M. (RIA) 78433; October 31, 1978, Filed *81 1. At a hearing under Rule 155 of the Tax Court Rules of Practice and Procedure to determine the correct amount of the deficiency in docket No. 8905-72 under the opinion rendered by this Court, T.C. Memo. 1977-198, petitioner attempted to raise a new issue requiring an allocation of income between petitioner and his former wife. Held, the new issue may not be raised at the Rule 155 hearing. 2. At the Rule 155 hearing in docket No. 8907-72, petitioner B. Silverton claimed for the first time that she did not sign the joint return for 1970 and was not liable for the deficiency determined to be due for that year. Held, B. Silverton intended the 1970 joint return to be her return and authorized her husband to affix her signature thereto. She is jointly and severally liable for the deficiency determined to be due for 1970. Ronald R. Silverton, pro se. Max Abrams, for petitioner B. Silverton. John O. Kent, for the respondent. DRENNEN
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION DREE @DRENNEN, Judge: Our opinion deciding the issues in these cases (docket Nos. 8905-72, 8906-72, 8907-72, and 7799-75) was filed on June 28, 1977. T.C. Memo. 1977-198. The cases are now before us to determine the correct amount of the deficiencies in income tax under Rule 155, Tax Court Rules of Practice and Procedure. The parties are in agreement as to the amount of the deficiencies to *83 be entered as the decisions in docket Nos. 8906-72 and 7799-75. We are faced, however, with continuing controversy in docket Nos. 8905-72 and 8907-72. Docket No. 8905-72
OPINION This docket number involves the taxable year 1968. The sole petitioner in this case is Ronald R. Silverton, an attorney and certified public accountant. He appeared pro se. [1] On June 28, 1977, we filed an opinion resolving the issues raised by his and respondent's pleadings. T.C. Memo. 1977-198. In accordance with Rule 155, Tax Court Rules of Practice and Procedure, we withheld entry of decision to permit the parties to submit computations pursuant to our determination of the issues. Respondent filed his computation for entry of decision on February 27, 1978. It was consistent with our opinion except that it did not take into account income averaging, which the parties had stipulated petitioner was entitled to use. Petitioner's computation for entry of decision, filed on March 27, 1978, differed from respondent's in two respects. One variation reflected his income averaging computations. *84 The parties subsequently resolved the income averaging aspects of the case, and on September 8, 1978, respondent filed a revised computation for entry of decision in this case using income averaging as agreed upon by the parties. The other difference goes beyond the issues before the Court and some background is necessary to understand it. Petitioner Ronald R. Silverton filed a joint return for himself and his former wife Fawn Silverton for calendar year 1968. Respondent issued a joint notice of deficiency to Ronald R. and Fawn Silverton. Ronald filed a petition under the caption "Ronald R. Silverton and Fawn Silverton" alleging that the 1968 return-- was a joint return with petitioner's former wife Fawn Silverton. However, petitioner was unable to obtain her signature on this petition. He believes she will file a separate petition. [Petition at p.1.] Fawn filed a separate petition and her case was severed from these proceedings and settled. After settlement of Fawn's case and after the trial, briefing, filing of our opinion, and filing of respondent's computation for entry of decision in this case, petitioner alleged in his computation for entry of decision that he *85 was divorced from Fawn Silverton prior to December 31, 1968, and thus was not entitled to file a joint return. See sec. 6013(d), I.R.C. 1954. As a consequence, he argued that one-half of the income earned by him up to the date of the divorce was community income of which only one-half was his in computing his separate tax liability. These allegations were never made in the petition, during trial, or in petitioner's original briefs on the merits. At a hearing in Washington, D.C., on April 5, 1978, under Rule 155, petitioner did not appear, and respondent challenged petitioner's right to raise this new issue. Respondent also alleged that in any event Ronald R. Silverton and Fawn Silverton had an agreement at the time of their separation that the income from Ronald's business would be his separate rather than community earnings. According to respondent, such an agreement would be given full effect under California law. The hearing was continued to Los Angeles, however, to afford petitioner an opportunity to be heard. At the subsequent hearings pertaining to the Rule 155 computations in this case and docket No. 8907-72, respondent maintained his position that, since petitioner *86 did not raise the issue in his petition or during trial, the allocation of income issue was not properly before the Court. Without deciding whether this issue could still be raised, additional testimony and documentary evidence were received from both parties. The additional evidence tends to support petitioner's claim that he was divorced from Fawn Silverton in 1968, but the evidence regarding the status of petitioner's earnings as separate or community property is contradictory. On brief the parties again presented their substantive arguments, but respondent was willing to abandon his contention that this issue was not properly before the Court. In fact, on September 8, 1978, respondent filed a revised computation for entry of decision in this case which correctly reflected the adjustments to income required by our opinion in this case and also utilized the income averaging technique authorized by statute and agreed to by the parties. However, respondent computed the tax due on the adjusted taxable income using tax rates applicable to a single individual filing a separate return. Pursuant to the statutory authority set forth in section 7453, I.R.C. 1954, [2] the Tax Court *87 has prescribed rules of practice and procedure for its proceedings. Rule 155 prescribes the procedure for computing the amount of a deficiency after the Court has heard and decided the issues raised and presented on the merits. Rule 155(c) provides: Any argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration. To allow petitioner *88 to raise an issue as to allocation of income for 1968 at this time would fly in the face of Rule 155(c), Tax Court Rules of Practice and Procedure, where, as here, failure to raise the issue timely is of petitioner's own making. Petitioner alleged in his petition, testified at trial, and asserted in his original briefs that the 1968 return was a joint return which would make him jointly and severally liable for the tax, computed at joint return rates, on all of the taxable income of the community for the year. It is obvious, and petitioner does not claim to the contrary, that petitioner knew at the time he filed the petition that he and Fawn were divorced in 1968 if such was a fact. There was no evidence offered in the trial of this case, and there have been no pleadings filed in this case, which would suggest that petitioner and Fawn were divorced in 1968 and were not entitled to file a joint return. Based on the record before us we made a finding that the 1968 return filed in the names of Ronald and Fawn Silverton was a joint return. It was not until petitioner filed his computation for entry of decision (which was after Fawn's separated case had been settled), when he apparently *89 realized that he might reduce his personal tax liability by attributing one-half of his income up to the date of the divorce to Fawn, that this issue first appeared. Under these circumstances and pursuant to Rule 155, Tax Court Rules of Practice and Procedure, we conclude that this issue is not properly before the Court. See Bankers Coal Co. v. Burnet,287 U.S. 308 (1932). Respondent's original computation for entry of decision in this case computed the tax on the income for the entire year 1968 as adjusted in accordance with the Court's opinion, on a joint return basis, and at the hearing objected to petitioner raising an issue as to allocation of the income. However, after reviewing the additional evidence presented at the Rule 155 hearings, respondent in his brief in connection therewith declared his willingness to have petitioner's untimely issue considered by the Court. Apparently respondent believes the final result would be more favorable to the Government from a revenue standpoint, i.e., taxing petitioner's entire earnings from his law practice for the year 1968, or at least from the date in February that petitioner and Fawn first separated, to petitioner *90 at single rather than joint rates. [3] We find respondent's belated attempt to raise new issues at this stage of the case no more compelling than petitioner's efforts. Respondent has filed no pleading in this case that would raise an issue of whether the 1968 return was a joint or individual return. Under the circumstances and pursuant to Rule 155, Tax Court Rules of Practice and Procedure, we also conclude that the issue of whether petitioner's income for 1968 should be taxed at single rather than joint return rates is not properly before the Court. Pursuant to the above, all evidence offered at the hearings on April 12, 1978, and May 16, 1978, relative to the above two issues in docket No. 8905-72 is rejected. The parties will submit a computation for entry of decision reflecting the adjustments required by the original opinion of the Court and the income averaging agreed upon by the parties with the tax computed at joint return rates. A decision in docket No. 8905-72 will be entered in accordance therewith. Docket No. 8907-72
*91 This docket number involves the taxable year 1970. The petitioners in this case are Ronald R. Silverton and B. Silverton, husband and wife. A Robert H. Anderson initially represented the petitioners but withdrew before trial. Thereafter Ronald represented himself and his wife through the filing of our opinion on June 28, 1977, in which we decided the issues raised by the pleadings. T.C. Memo. 1977-198. Again, under Rule 155, Tax Court Rules of Practice and Procedure, we withheld entry of decision to allow the parties to submit computations pursuant to our determination of the issues. Respondent filed his computation for entry of decision on February 27, 1978. Again, it was in keeping with our opinion except that it did not take into account income averaging, which the parties had stipulated petitioners were entitled to use. Petitioners' computation for entry of decision, filed on March 27, 1978, reflected their income-averaging computations [4] but also raised a broader question. B. Silverton, represented by a new attorney, Max Abrams, claimed she did not sign a joint return for 1970, did not authorizes her husband to sign her name to the joint return, but *92 only authorized him "to effect an individual return" for her. Also, she asserted she "did not execute her name to any of the documents or papers" in this case, nor did she authorize her husband to do so on her behalf. Finally, she alleged she did not authorize her husband to represent her in this case, nor did she have knowledge that he did so represent her. Based upon these claims, petitioners computed their tax liabilities for 1970 as if they had filed separate returns. B. Silverton's allegations require us to consider whether our previous findings of fact and opinion apply to her. See Toscano v. Commissioner,441 F. 2d 930 (9th Cir. 1971), where the Nith Circuit required the Tax Court to consider similar contentions years after a Tax Court judgment became final. A hearing on the Rule 155 computations was held in Washington, D.C., on April 5, 1978, but there was no appearance on behalf of either Ronald Silverton or B. Silverton. In order to give petitioners a more convenient opportunity to be heard, the hearing was continued to Los Angeles, Calif., on April 12, 1978. Both Ronald Silverton *93 and B. Silverton were present at that hearing. Without deciding whether the issue was properly before the Court, B. Silverton was permitted to offer evidence in support of her claim. Based on the prior record and the evidence received at the hearing in Los Angeles on April 12, 1978, we find these additional facts and reach the following conclusion. FINDINGS OF FACT On May 30, 1970, Ronald R. Silverton married B. Silverton. [5]
On or before April 15, 1971, a joint return for 1970 was filed with respondent containing the signature of Ronald R. Silverton and the purported signature of B. Silverton. No separate individual return was filed by B. Silverton for 1970. The 1970 joint return of the petitioners reported wages received by B. Silverton and deducted expenses attributable to B. Silverton. On September 8, 1972, respondent mailed a joint statutory notice of deficiency to Ronald R. Silverton and B. Silverton determining a deficiency in income tax for the taxable year 1970. On December 4, 1972, Ronald R. Silverton and B. Silverton filed a petition *94 with the United States Tax Court requesting a redetermination of the joint deficiency determined by the respondent in his notice of deficiency dated September 8, 1972. B. Silverton signed the petition filed in docket No. 8907-72. B. Silverton also signed the verification attached thereto. An amended petition was also filed by Ronald R. Silverton and B. Silverton alleging that they were entitled to net operating loss carrybacks from 1971, 1972, and 1973. The signature on the amended petition was not B. Silverton's, but the signature on the verification to the amended petition was hers. B. Silverton signed the stipualtion of facts which was received in evidence in docket No. 8907-72. In this document it was stipulated by the parties that Ronald R. Silverton and B. Silverton timely filed their joint 1970 income tax return which was entered into evidence as Exhibit 3-C. B. Silverton and Ronald R. Silverton both signed a joint income tax return for 1971 which was filed with respondent. Joint income tax returns for Ronald R. and B. Silverton for the years 1972 and 1973 were filed with respondent. B. Silverton did not sign those returns; however, she did adopt those returns. *95 B. Silverton had filed individual income tax returns for the taxable years 1965 through 1969 and was aware of her obligation to file. Those returns were prepared by someone else. In early 1971, B. Silverton had discussions with Ronald R. Silverton regarding the preparation of a 1970 income tax return. Ronald told B. that he would take care of the matter for her. Since Ronald was a certified public accountant and an attorney who had handled tax matters, B. trusted Ronald to make the proper decision with regard to her income tax liability for 1970. She intended that Ronald prepare a 1970 income tax return for her and she would have accepted anything Ronald did with regard to her 1970 income tax liability. In his opening statement at the trial of this matter on the merits on January 20, 1976, Ronald R. Silverton stated that B. Silverton signed the 1970 income tax return. At the time he made this statement, he believed that he was authorized to represent that B. Silverton was jointly and severally liable for any tax deficiency that might be determined against him for 1970. Prior to trial in January 1976, Ronald R. Silverton believed he was authorized to negotiate a settlement *96 of the tax liability for 1970 on behalf of his wife and believed that he would have had no problem in obtaining her signature on settlement documents. OPINION This issue is whether B. Silverton is jointly and severally liable for the deficiency in income tax found to be due from the Silvertons for the year 1970. This turns on whether she filed or intended to file a joint return with Ronald. B. contends that she did not sign the return and thus should not be liable for the deficiency. At the outset we quote from this Court's opinion in Hennen v. Commissioner,35 T.C. 747 (1961), at 748: The fact that one spouse fails to sign the return is not always fatal to the finding of a joint return. Muriel Heim,27 T.C. 270 (1956), affd. 251 F. 2d 44 (C.A. 8, 1958). The determinative factor is whether the spouses intended to file a joint return, their signatures being but indicative of such intent. Hyman B. Stone,22 T.C. 893 (1954), appeal dismissed. This intent may be inferred from the acquiescence of the nonsigning spouse. * * * See Ladden v. Commissioner,38 T.C. 530 (1962), appeal dismissed. *97 On the record in this case we conclude that B. Silverton intended that the joint return prepared and filed by Ronald Silverton for 1970 be her return and that she authorized Ronald to affix her signature thereto. She is therefore jointly and severally liable for the deficiency in tax found to be due for the year 1970. We have found B. Silverton's allegations to be largely contrary to the facts. To begin, despite her allegation that she did not execute her name to any of the documents or papers in this case, she admitted in her testimony that she in fact signed the petition and stipulation of facts. [6]
The petition in this case indicates that the notice of deficiency was mailed to Ronald R. Silverton and B. Silverton and that the deficiency was in income tax for the calendar year 1970. Nonetheless B. Silverton apparently claims she had no knowledge of the proceedings in this case regarding her joint 1970 tax liability with her husband on the ground she did not read the petition. She cannot so turn her back on this case. By signing the petition B. Silverton certified *98 that she had read the petition; that, to the best of her knowledge, information, or belief there was good ground to support it; that it was not frivolous; and that it was not interposed for delay. Rules 34(a) and 33(b), Tax Court Rules of Practice and Procedure. And, although not required, see Rule 33(a), Tax Court Rules of Practice and Procedure, on the last page of the petition B. Silverton and her husband signed a separate verification: RONALD R. SILVERTON and B. SILVERTON, being duly sworn, say that they are the petitioners above-named; that they have read the foregoing petition, or had the same read to them, and are familiar with the statements contained therein, and that the statements contained therein are true, except those stated to be upon information and belief, and that those they believe to be true. In the stipulation of facts it was stipulated that petitioners timely filed their 1970 income tax return, which purported to be a joint return and was entered into evidence as part of the stipulation of facts. See Rule 91(a)(1), last sentence, Tax Court Rules of Practice and Procedure. B. Silverton testified that she did not remember whether she read the stipulation *99 of facts, but she said she would think she did. In any event, the stipulation is binding on her under Rule 91(e), Tax Court Rules of Practice and Procedure: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. A stipulation and the admissions therein shall be binding and have effect only in the pending case and not for any other purpose, and cannot be used against any of the parties thereto in any other case or proceeding. We are not persuaded that justice requires us to go behind the stipulation of facts B. Silverton signed. Although she did not sign the 1970 joint return herself, her vague and contradictory testimony, corroborated by her husband's latest version of events, was unconvincing. Despite her claimed intention of authorizing her husband to file a 1970 separate return for her, we find otherwise. We believe that if any specific intention can be distilled from *100 her contradictory testimony, it was to authorize her husband to file the return he regarded as being in their best interest. [7] We draw this conclusion from the entire record, but several points are particularly telling. B. Silverton knew that she was required to file a return for 1970. She discussed it with her husband and asked him to prepare the return. Her income and expenses before the marriage were included in the joint return and Ronald must have gotten the information from her. Filing a joint return was of considerable advantage to the Silvertons taxwise. B. testified that she had no recollection of signing a separate return for 1970. The inference is clear that she intended to have her income and expenses included in a joint return with Ronald and that she authorized *101 Ronald to sign her name to the joint return. Furthermore, we find that B. ratified Ronald's action when she signed the petition in this case. And B.'s testimony that she was ignorant of these proceedings until sometime in 1978 is belied by the fact that she signed both the petition and the stipulation of facts. B. Silverton testified that she did not sign the joint return for 1970 (and indeed the signature does not appear to be hers) and that she did not intend it to be her return. However, she also testified that she did not sign the joint returns for 1972 and 1973 but nevertheless she adopted them as her returns. We note that it was determined that there were no tax deficiencies for 1972 and 1973 while there is a sizeable deficiency for 1970. Whatever B. Silverton's actual intention was with respect to the 1970 joint return filed by Ronald R. Silverton on the couple's behalf, she had a fair opportunity to raise the joint return issue in the earlier proceedings of this Court, and Toscano v. Commissioner,441 F. 2d 930 (9th Cir. 1971), does not help B. Silverton's position. Given our uncontested findings that B. Silverton signed the petition and stipulation *102 of facts, we will not consider her claim further at this time. [8] We believe she was aware of our earlier proceedings, and, if she was not, it was the consequence of her own carelessness. Our opinion filed June 28, 1977, is applicable to both Ronald and B. Silverton. The fact that under California law Ronald's earnings in 1970 before the marriage might be considered his separate property does not relieve B. Silverton of joint and several liability for the taxes thereon if she filed a joint return with Ronald for the year 1970. Sec. 6013(d)(3), I.R.C. 1954. See also Brooks v. Commissioner,T.C. Memo. 1975-295. On June 18, 1978, respondent mailed his revised computations for entry of decision in this docket, reflecting income averaging, to petitioners. That computation was filed with the Court on September 8, 1978. By letter dated *103 September 14, 1978, addressed to petitioners and respondent, the Court asked the parties to affirm its assumption that the parties had agreed on the income averaging computation. By letter dated October 12, 1978, respondent advised the Court that he had received no objections from petitioners to his revised computations. By letters dated October 23, 1978, petitioners advised the Court that they had objections to respondent's computations but were awaiting our conclusions discussed herein to file objections or submit their own computations. Respondent's revised computation in this docket appears to be consistent with the conclusions reached in our original opinion and in the discussion above. Consequently, petitioners are directed to file, on or before November 30, 1978, their specific objections to respondent's revised computations and their revised computations for entry of decision in this docket consistent with our original opinion and our conclusions above. If no such objections or revised computations are filed by November 30, 1978, decision will be entered in this docket pursuant to respondent's revised computation filed September 8, 1978. Footnotes
1. A Robert H. Anderson also represented petitioner when the pleadings were filed.↩
2. SEC. 7453. RULES OF PRACTICE, PROCEDURE, AND EVIDENCE. Except in the case of proceedings conducted under section 7463, the proceedings of the Tax Court and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Tax Court may prescribe and in accordance with the rules of evidence applicable in trials without a jury in the United States District Court of the District of Columbia.↩
3. Respondent's settlement with Fawn taxed to her onehalf of the community income up to the date of the separation in February 1968.↩
4. The parties have since resolved the income-averaging question.↩
5. Mrs. Silverton also is known as Hilde Silverton. For convenience, we will refer to her here only as B. Silverton.↩
6. She also admitted signing a verification of the amended petition but not the amended petition itself.↩
7. With the benefit of hindsight, his judgment of what was in their best interest seems to have changed. At the original hearing Ronald R. Silverton, during his opening statement, stated that B. Silverton signed the 1970 income tax return. At the time he made this statement, he believed he was authorized to represent that B. Silverton was jointly and severally liable for the 1970 income tax liability.↩
8. Although we regard the joint return issue as closed at this point, we note that signing of a joint petition in which no attack is made on respondent's joint treatment of their tax liability has been held to be a ratification of joint return status. O'Connor v. Commissioner,412 F. 2d 304↩ (2d Cir. 1969).