CAROL PITTMAN WALKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walker v. Commissioner
Docket No. 12152-86.
United States Tax Court
T.C. Memo 1987-598; 1987 Tax Ct. Memo LEXIS 597; 54 T.C.M. (CCH) 1257; T.C.M. (RIA) 87598; December 7, 1987. Henry Donald Frantz, Jr. and Randy M. Wells, for the petitioner. Carolyn Lee Harber, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax liabilities for 1980 and 1981 in the amounts set forth below: Additions to Tax, Sec. [1]
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1980
$ 5,679.05
$ 1,419.76
$ 461.95
-0-
1981
6,289.32
1,572.33
528.97
*
*598 The primary issue for decision is whether the Federal income tax returns (Forms 1040) signed by petitioner and her ex-husband for 1980 and 1981 constitute joint returns so as to preclude petitioner from now filing amended returns on a separate return basis. FINDINGS OF FACT The issue in this case arises out of unfortunate and difficult domestic relations problems of petitioner and her ex-husband, Dannelly L. Logue. Petitioner resided in Stone Mountain, Georgia, when she filed her petition in this case. On December 30, 1983, petitioner and Mr. Logue were divorced. Due in part to the marital problems, neither petitioner nor her ex-husband timely filed Federal income tax returns for the years 1980 or 1981. Prior years' Federal income tax returns had been filed on a joint return basis. On March 28, 1983, in response to an inquiry from the Internal Revenue Service concerning their failure to file 1980 and 1981 Federal income tax returns, petitioner and Mr. Logue met with a revenue officer of the Internal Revenue Service in Atlanta, Georgia. At that time, Mr. Logue disclosed the amount of his wages for 1980 and 1981 to the revenue officer. Based on the limited information *599 provided by petitioner and Mr. Logue, the revenue officer filled out Federal income tax returns (Forms 1040) for petitioner and Mr. Logue for 1980 and 1981. The filing status on the 1980 return was designated clearly by a distinct "X" in the middle of the box for "Married filing joint return." The filing status of petitioner and Mr. Logue on the 1981 return filled out by the revenue officer was not designated clearly. A mark which appears to be a "T," leaning at a diagonal angle, was placed partially in the box for "Married filing joint return" and partially in the box for "Married filing separate return." The point at which the two lines that constitute the "T" meet does not fall within either of the two relevant filing status boxes, but rather that point falls exactly on the horizontal line dividing the two boxes. During the meeting with the revenue officer on March 28, 1983, petitioner and Mr. Logue signed the 1980 and 1981 returns that were filled out by the revenue officer. The evidence is conflicting, however, as to whether the marks in the filing status boxes discussed above were placed on the returns by the revenue officer before or after petitioner and Mr. Logue signed *600 the returns and left the meeting. Various documents that were submitted in connection with the divorce proceedings between petitioner and Mr. Logue referred to petitioner's and Mr. Logue's 1980 and 1981 Federal income tax liabilities as "joint" liabilities (e.g., Complaint For Divorce and Other Relief, par. 18, filed on June 28, 1983). Other documents relating to the divorce proceedings suggest that those tax liabilities were treated by petitioner and Mr. Logue as separate liabilities of each spouse (e.g., the Settlement Agreement, par. 12). On March 18, 1986, petitioner filed amended Federal income tax returns (Forms 1040X) for 1980 and 1981, in her individual capacity, claiming thereon a filing status of "Married filing separate return." On the amended returns, petitioner reported income relating to businesses that she and Mr. Logue had owned in 1980 and 1981 that was not disclosed to the revenue officer and therefore was not reported on the original 1980 and 1981 tax returns filled out by the revenue officer. Respondent, in his notice of deficiency for each year, combined the wage income of Mr. Logue, as reported on the original returns, with the business income reported *601 on petitioner's separate amended returns and determined deficiencies against petitioner and Mr. Logue on a joint return basis. OPINION A husband and wife who file a joint Federal income tax return cannot later, after the due date of the original return, file an amended return on a separate return basis. Sec. 1.6013-1(a)(1), Income Tax Regs.[2]Ladden v. Commissioner,38 T.C. 530, 534 (1962). Whether a tax return is a joint return is a fact question that turns on the intent of the parties. Shea v. Commissioner,780 F.2d 561, 567 (6th Cir. 1986); Gaynes v. United States,454 F.2d 1142, 1143 n.3 (5th Cir. 1972); Estate of Temple v. Commissioner,67 T.C. 142, 164 (1976). Petitioner alleges that when she signed the original returns in the Internal Revenue Service office, no information was *602 recorded on the returns other than her and Mr. Logue's names and address. She claims that the revenue officer must have marked the filing status and added the financial information to the returns after she and Mr. Logue had signed blank Forms 1040 and had left the Internal Revenue Service office. Under the circumstances, petitioner argues that the original Forms 1040 cannot be regarded as her and Mr. Logues's tax returns, and therefore that petitioner and Mr. Logue cannot be regarded as having elected thereon joint return filing status. Petitioner also argues that the mark that does appear in the filing status box for 1981 is unclear as to which filing status was designated. Petitioner states that in the spring of 1983 the marital problems between herself and Mr. Logue were so bad that the last thing she ever would have done at that time is agree to file joint income tax returns with her estranged husband. The fact, however, is that petitioner knowingly placed her signature on each of the original tax returns that were filled out by the revenue officer. We believe and accept the revenue officer's testimony that the financial information and the marks in the filing status boxes *603 on the Forms 1040 for 1980 and 1981 were placed thereon by the revenue officer in the presence of petitioner and Mr. Logue and that petitioner signed the returns knowing that that information was on the returns. We, however, agree with petitioner that the designation of the filing status on the 1981 return is unclear and that the ambiguity created thereby, however innocently and inadvertently done, should be construed against respondent whose representative was the draftsman therefor. Mott v. Odeco,577 F.2d 273, 278 (5th Cir. 1978), cert. denied 440 U.S. 912 (1979); C.A. May Marine Supply Co. v. Brunswick Corp.,557 F.2d 1163, 1165 (5th Cir. 1977). With regard to the unclear designation of the filing status on the 1981 original return, the following explanation was given at trial by the revenue officer: THE COURT: * * * The X in the filing status on the '81 return is rather strange. It doesn't appear to be an X; it appears to be a diagonal line going from top left to bottom right, covering two boxes, and then a horizontal line going from bottom left to the top right on box two. They don't actually cross each other. That is *604 a rather strange way of marking those boxes; is that your mark? THE WITNESS: Yes, it is. THE COURT: It doesn't look like the other X's, does it? THE WITNESS: No, it doesn't. THE COURT: Which box is marked? THE WITNESS: Block number 2, married, filing joint. THE COURT: How do you interpret -- determine that -- of the line -- the [diagonal] line from left to right goes into box 3; the lines cross right at the line dividing the two boxes. THE WITNESS: Well, sir, all I can attribute it to was a slip of the hand. THE COURT: I know, but the -- obviously, there was a slip of the hand, but in which way? Which way did the slip occur; up or down? THE WITNESS: It was to be -- THE COURT: The lines cross right at the line dividing the two statuses. THE WITNESS: It was earmarked for block number 2. THE COURT: How can you determine that now? Surley you don't remember that now? THE WITNESS: The -- well, I can only surmise that based on the '80 filing. Based on the above facts, we conclude that the Form 1040 for 1980, filed on March 28, 1983, constitutes petitioner's original return for 1980 and that it was filed on a joint return basis. Accordingly, petitioner *605 is jointly liable for the tax deficiencies and additions to tax determined against her and Mr. Logue for that year. The Form 1040 filed on March 28, 1983, for 1981, also constitutes petitioner's original return for 1980. However, no clear designation of petitioner's filing status was set forth thereon. Accordingly, petitioner's filing status for 1981 is to be governed by the amended Form 1040X petitioner filed for that year. The determination of petitioner's Federal income tax liability for 1981 is to be governed only by those income and deduction items set forth on the original and the amended 1981 tax returns that are attributable to petitioner; as distinct from her ex-husband. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
*. Amount statutorily determined as equal to 50 percent of the interest payable with respect to the underpayment for 1981 in the amount of $ 6,289.32. ↩
2. Sec. 1.6013-1(a)(1), Income Tax Regs., provides, in part, as follows: § 1.6013. Joint returns. (a) In general. -- (1) * * * For any taxable year with respect to which a joint return has been filed, separate returns shall not be made by the spouses after the time for filing the return of either has expired. * * * ↩