JOYCE E. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 4383-76.
United States Tax Court
T.C. Memo 1979-351; 1979 Tax Ct. Memo LEXIS 174; 39 T.C.M. (CCH) 22; T.C.M. (RIA) 79351; September 4, 1979, Filed *174 Held: Amount of deductions to which petitioner is entitled determined; held, further: Income tax returns were not signed under duress and were intended as joint returns; held,further: At least some of the underpayment in tax for each year was due to fraud; held,further: Petitioner is not entitled to relief as an innocent spouse; held,further: Income tax is not unconstitutional. Lloyd Taylor, for the petitioner. Rebecca T. Hill, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions thereto pursuant to section 6653(b) [1] as follows: *176 Sec. 6653(b)
Taxable Year
Deficiency
Additions to Tax
1970
$1,575.83 $ 787.92
1971
808.89
404.44
1972
9,151.43
4,575.72
We are presented with the following issues: (1) whether respondent correctly determined the amount of deficiencies in each of the years 1970, 1971, and 1972; (2) whether the income tax return for each year in issue was a joint return; (3) whether the statute of limitations bars the assessment of the deficiencies for 1970 and 1971; (4) whether at least some of the underpayment of taxes for each of the years in issue was due to fraud by petitioner; (5) whether petitioner is entitled to relief as an "innocent spouse" pursuant to section 6013(e); and (6) whether the Sixteenth Amendment to the United States Constitution was properly ratified. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner, Joyce E. Johnson, resided in San Rafael, California at the time she filed her petition herein. Petitioner filed (and signed) joint income tax returns with her husband, Elzie, for the years 1969, *177 1970 and 1971. For the year 1972, Elzie filed a return which purported to be a joint return and signed petitioner's name to it. The filing status was indicated as "Married filing joint return * * *," and petitioner was claimed as an exemption. Petitioner's occupation was listed as "housewife," and there were three children, Jeanean, Jessie and Joseph, listed as dependents. Only Jeanean, however, was actually the Johnsons' child and she was their only child. Petitioner did not file an individual tax return for 1972. For each of the years, tax refunds (for overwithholding) were claimed on the returns and were subsequently paid. The statutory notice of deficiency was sent April 15, 1976. During an interview of petitioner and Elzie (who remained together throughout the interview) by revenue agents at the offices of the Internal Revenue Service Intelligence Division in San Francisco, Elzie stated that Jeanean was eight years old and the other children were two-year old twins. Throughout the entire interview, Elzie referred to the "children" and petitioner never pointed out that there was only one child. Although petitioner never actually stated that she had three children, *178 her responses to certain questions deliberately misled the agents into believing that that was the case. Petitioner also stated that she had reported all her earnings and had reviewed the 1972 return to make sure all their income was reported before Elzie signed it. Furthermore, she admitted that the 1972 return was hers even though she did not sign it. It was not until the date of the trial that petitioner stated that she never filed a tax return for 1972. The only income reported on any of the returns for the years in issue was that earned by Elzie as a painter's helper, amounting to $12,222.21 in 1970, $12,705.94 in 1971, and $11,641.30 in 1972. Petitioner, however, earned $3,971.56 during 1970 [2] and $190.30 during 1971 from the Fifth Avenue Convalescent Hospital and earned $2,618.07 during 1972 from Fiber Plastics, Inc. She also earned some money by baby-sitting and selling cosmetics during the years in issue. *179 Both petitioner and Elzie collected the information to give to their accountant, who prepared the 1971 and 1972 returns. Petitioner helped balance the checkbook and knew that large deposits were being made to the Johnsons' checking account during 1972. [3] In addition, petitioner signed most of the checks (although often signing Elzie's name) for the family and was aware that the amount of expenditures being made was greater than their reported income. Petitioner wrote checks totaling at least $33,164.14 during 1972. Included in this amount are escrow payments of $12,103.86 for the down payment on a home the Johnsons purchased in October for $48,500 (plus costs). In addition to these amounts, either petitioner or Elzie paid $1,100 in November to install iron gates and grills at their new home. The Johnsons also spent over $563.68 at Marin Lights and $1,189.02 at Sears during 1972. Elzie had been arrested and convicted twice of burglary in 1967 and was engaged in illegal drug trafficking activities during 1972. On December 12, 1972, the Johnsons' home was searched by the San Rafael police department and on March 1, 1973, Elzie *180 was arrested and later convicted on a charge of selling heroin. Because the Johnsons' records were insufficient to permit an accurate computation of petitioner's income tax liability for 1972, respondent computed the Johnsons' tax liability for 1972 using the net worth method of reconstructing income and determined that the Johnsons understated gross income by $28,428.39, including receipts from the sale of narcotics, among other sources. Respondent also disallowed $1,091.91 of the $4,519.68 in itemized deductions and two of the five exemptions claimed in 1972. ULTIMATE FINDINGS OF FACT (1) The income tax returns filed in the name of Elzie and petitioner for each year were intended as, and were in fact, a joint returns. (2) For each of the taxable years in issue, petitioner filed a fraudulent tax return with intent to evade or defeat taxes. (3) Petitioner was aware of certain income received by her husband, Elzie, in 1972 and not reported in their joint tax return for that year. OPINION Petitioner has failed to introduce any evidence or testimony to show that respondent's disallowance of deductions or reconstruction of income was erroneous, nor was any such argument *181 raised on brief. Because the Johnsons' records were inadequate to determine their correct income, respondent was justified in reconstructing it using the net worth method. See Holland v. United States,348 U.S. 121 (1954); Vassallo v. Commissioner,23 T.C. 656 (1955). Accordingly, we hold that, even assuming that petitioner has not conceded the correctness of the deficiencies, she has totally failed to meet her burden of proof, and thus, the amount of deficiencies must be sustained for each of the years in issue. We now turn to the issue of whether the 1972 return was a joint return. Petitioner contends that because she did not sign the 1972 return it was not a joint return. It is well established, however, that failure of one spouse to sign a return will not preclude the treatment of it as a joint return if both spouses intended such treatment at the time the return was filed. Hennen v. Commissioner,35 T.C. 747 (1961); Heim v. Commissioner,27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958); Stone v. Commissioner,22 T.C. 893 (1954). [4] This intent may be inferred from the *182 acquiescence of the nonsigning spouse.Since petitioner never objected to the filing of a joint return and did not file a separate return (although one would have been required), it is presumed that a joint return was filed with the tacit consent of the nonsigning spouse. Hennen v. Commissioner,supra.
The evidence quite clearly indicates that petitioner intended the 1972 return to be filed as a joint return. She knew that the return had been filed as such and waited until the day of trial, over four years from the date the return was filed, before she disavowed it. Cf. Campbell v. Commissioner,56 T.C. 1, 13-14 (1971). Moreover, she helped Elzie collect information to give to their accountant who prepared the 1972 return, and she reviewed it before Elzie signed it in order to make sure that all their income was reported. In addition, the Johnsons filed joint returns for the three prior years, thus having established a pattern of filing jointly. Cf. Federbush v. Commissioner,34 T.C. 740 (1960). Perhaps the strongest indication that the return *183 was intended to be a joint return, however, is petitioner's statement during the interview with the revenue agents. When asked if she signed the 1972 return, she noted that her name was written by Elzie but when asked if the return was hers, she replied that it was. Cf. Ladden v. Commissioner,38 T.C. 530 (1962) (written letter to district director served as an acceptance of a purported joint return previously filed by the taxpayer's husband but not signed by her). Petitioner next argues that none of the returns in issue, including those for 1970 and 1971, were joint returns because she signed them under duress. We have held in some instances where a spouse signed a return under duress or fear of bodily injury that the return was not a joint return. Brown v. Commissioner,51 T.C. 116 (1968). [5] In the instant case, even if we were to find duress, there is the further question of whether petitioner nevertheless intended the returns to be her returns, or whether she intended to evade taxes because she did not thereafter file a separate return.
We need not reach these *184 latter questions, however, since the record does not even suggest that petitioner signed the returns against her will.Although Elzie was involved in criminal activities, there is no evidence or even testimony of any threats of physical coercion either during their marriage or at the time Elzie signed the returns. At trial the only testimony with respect to petitioner's signing the returns was her statement, "you know, he'd tell me to sign, I signed." Cf. Stanley v. Commissioner,45 T.C. 555 (1966); as we noted there at p. 556, we need not find that the petitioner acquiesced in the spouse's fraudulent conduct to hold that she signed the returns willingly. Accordingly, we hold that the returns filed for each year in issue were in fact joint returns. Petitioner next contends that assessment of the deficiency for the taxable years 1970 and 1971 is barred by the statute of limitations. Respondent concedes that the normal three-year limitation of section 6501(a) has expired but maintains that the deficiency may be assessed under the provisions of section 6501(c)(1), allowing assessment at any time in the case of a fraudulent return. Respondent also contends that with *185 respect to the taxable year 1970, even if the return was not fraudulent, the six-year statute of limitations provided by section 6501(e) operates to permit assessment because petitioner omitted in excess of 25 percent of her actual gross income from the amount stated on her return. Respondent has the burden of proving fraud. Section 7454(a). It has long been held that the existence of fraud is a question of fact to be determined upon a consideration of the entire record. The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Estate of Pittard v. Commissioner,69 T.C. 391 (1977). The intention to defraud must be established by clear and convincing evidence. Rule 142(b), Tax Court Rules of Practice and Procedure; Estate of Temple v. Commissioner,67 T.C. 143 (1976). Petitioner agrees that there were "irregularities" in each of the years' returns and impliedly concedes that Elzie intended to evade some of the taxes he believed to be owing. She argues, however, that Elzie handled all of the Johnsons' tax matters and that all representations made by petitioner were *186 made at the specific direction of Elzie; that petitioner was coerced by fear of violence to sign the returns. We have previously rejected petitioner's claim of coercion and we believe that petitioner was aware of the understatements of income and the claiming of fictitious exemptions in all years. In none of the years in issue was petitioner's income reported and her occupation was listed on the return as "housewife." The amount of taxes withheld from her wages falls short of the additional taxes due. Although this shortfall is not necessarily substantial in dollar amount, [6] it is significant that petitioner did not even testify that she believed her with-holding would satisfy the tax liability attributable to her salary. Moreover, the amount of petitioner's income, which was not reported in any year, amounted to almost 1/3 of the reported income in 1970 and almost 1/4 of the reported income in 1972. This could only have been meant to intentionally mislead respondent's agents into believing she had no income. Petitioner's W-2 forms were not attached to the returns, although she helped gather the information provided the accountant in 1971 and 1972. Petitioner was aware that *187 expenditures and bank deposits made in 1972 exceeded the Johnsons' joint income. Even more damaging than the omissions of her income is the claiming of false exemptions. The inference of fraud is apparent for it is impossible to even negligently claim two non-existent dependent children. Cf. Miller v. Commissioner,51 T.C. 915 (1969). [7] Petitioner's testimony during the interview with the revenue agents was deliverately meant to mislead them into believing that the Johnsons had three children. Joyce argues that this testimony was untruthful and motivated by her fear of Elzie. Such testimony was given under oath and made a part of the record of this case and, as we noted earlier, we can find no evidence in the record that Joyce was afraid of Elzie. We believe this provides yet another indicia of fraud. Estate of Beck v. Commissioner,56 T.C. 297, 365 (1971). *188 Accordingly, we have found as a fact and we hold that petitioner fraudulently intended to evade at least a portion of the taxes believed to be owing during each of the years in issue. Therefore, the statute of limitations does not bar assessment of the deficiencies in any of the years. [8]
*189 For the same reasons discussed above with respect to the statute of limitations, we hold that at least part of the underpayment of taxes in 1970, 1971 and 1972 was due to fraud by petitioner, within the meaning of section 6653(b), and accordingly, we sustain the additions to tax determined by respondent under that section. Petitioner's liability for the deficiencies for each of the years is joint and several by virtue of her having filed a joint return with her husband. Section 6013(d)(3). However, section 6013(e) relieves a spouse of liability for tax and penalties on income from a joint return if certain conditions are met: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, *190 and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special rules.--For purposes of paragraph (1)- (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A). All of the stated conditions must be met. [9]Estate of Jackson v. Commissioner,71 T.C. 356 (1979); Adams v. Commissioner,60 T.C. 300, 303 (1973). With respect to the taxable year 1972, respondent determined that gross income was understated by $28,428.39. *191 Although this included petitioner's unreported salary of $2,618.07 (and perhaps some de minimis additional income from babysitting and cosmetic sales) the major portion of the balance appears to have been income of Elzie. Thus, the condition of section 6013(e)(1)(A) would be applicable. We believe that petitioner was aware that large amounts of income were not reported on the 1972 return. In view of her knowledge of large deposits and the fact that she wrote checks well in excess of the income reported (and knew she was doing so), her protestations on brief that she was extremely naive *192 about money matters generally and that Elzie handled all of the Johnsons' finances are simply not to be believed. Moreover, she was aware of Elzie's illegal activities since at least the time of the police search of their home in December 1972 and Elzie's arrest in March 1973. Because she had knowledge of the omissions, she has failed to meet the requirement of section 6013(e)(1)(B). [10]
Petitioner's final argument is that the Sixteenth Amendment to the United States Constitution was never properly ratified because Ohio was never admitted as a state and the two-thirds majority required to ratify the amendment would otherwise not have been met. This argument has been rejected previously. Davis v. Commissioner,T.C. Memo. 1978-69. Decision will be entered for respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
2. The increase in the Johnsons' gross income for 1970, as determined by respondent in the notice of deficiency, was based entirely on the omission of petitioner's salary of $3,971.56. Other adjustments to taxable income were the disallowance of two of the five exemptions claimed and the disallowance of $2,037.10 of the total of $3,719.25 in itemized deductions claimed. Respondent did not determine any unreported income for 1971, and the deficiency for that year was the result of the disallowance of two of the five exemptions claimed and the disallowance of $2,720.83 of the total of $4,220.83 in itemized deductions claimed.↩
3. Deposits during 1972: [SEE TABLE IN ORIGINAL]↩
4. See also Parker v. Commissioner, T.C. Memo. 1978-23↩.
5. See also Hansen v. Commissioner,T.C. Memo. 1976-84↩.
6. ↩
Petitioner's Income
not including baby-
Gross Income
Taxable Income
sitting and commissions
Year
Reported
Reported
from cosmetics
1970
$12,222.21
$5,377.96
$3,971.56
1971
12,705.94
5,110.11
190.00
1972
11,641.30
3,371.62
2,618.07
7. See also Daniels v. Commissioner,T.C. Memo. 1979-282; White v. Commissioner,T.C. Memo. 1978-267; Linder v. Commissioner,T.C. Memo. 1959-69; Geuze v. Commissioner,↩ a Memorandum Opinion of this Court dated October 28, 1953.
8. Respondent has disallowed substantial deductions claimed in each of the years. As we noted earlier, petitioner has offered nothing to substantiate those disallowed deductions and we have upheld respondent's determination on that basis. It is clear that for purposes of determining fraud, a fraudulent understatement of income may be accomplished by a deliberate overstatement of deductions. Estate of Temple v. Commissioner,67 T.C. 143↩ (1976). Respondent cannot, however, meet his burden of proof in establishing fraud solely on the basis of petitioner's failure to discharge the burden of proving error in the deficiencies. On the basis of the record before us, and because we have already found fraud by petitioner, we decline to use the disallowed deductions as additional evidence of fraud in this case.
9. It is not clear whether petitioner is contending that she is entitled to the benefits of section 6013 (e) for 1970 and 1971 as well as for 1972. The deficiency assessed for 1971 was not based upon an omission of income and, therefore, section 6013(e) does not apply for 1971. Sec. 1.6013-5!d), Income Tax Regs. For 1970, it is clear that in the notice of deficiency the entire amount of income respondent determined to have been omitted ($3,971.56) was attributable to petitioner's salary and was not an omission of Elzie's income. For this reason, section 6013(e) does not apply for 1970.↩
10. Since petitioner does not meet the requirements of section 6013(e), we do not reach respondent's alternative contention that she should be denied the benefits of that section even if all of the conditions have been met because she was aware that income was fraudulently understated on the return (i.e., her income was not reported).↩