JULIAN E. PARKER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parker v. Commissioner
Docket No. 5048-75.
United States Tax Court
T.C. Memo 1978-23; 1978 Tax Ct. Memo LEXIS 491; 37 T.C.M. (CCH) 144; T.C.M. (RIA) 780023; January 19, 1978, Filed *491 Petitioner's former wife did not sign either the 1971 or 1972 tax return filed by petitioner. At petitioner's direction, her name was placed on the return and it was filed as a joint return. Petitioner and his wife permanently separated in July 1971 and were divorced in February 1973. Petitioner' wife later discovered that her name was forged on the returns and notified the I.R.S. Petitioner's wife would have signed the 1971 return had she been asked but not the 1972 return. Petitioner's wife's nonacceptance of joint status was due solely to personal reasons wholly unrelated to the filing of the return, and not to any intent that the returns be different from those filed for other years. Held, returns were intended as joint returns and petitioner is entitled to the benefits thereof. Held,further, since the section 6653(a) penalty is based on petitioner's having filed a joint return instead of a separate return, there is no basis for it. Robert G. Ray, for the petitioner. Wright Tisdale, Jr., for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's income *492 tax and additions to the tax under section 6653(a) [1] as follows: Addition to Tax Year
Deficiency
Section 6653(a)
1971
$3,349.55
$167.48
1972
3,394.91
169.75
Outside a of $33.98 omission of income, which petitioner concedes, the deficiencies determined by respondent are due to his calculating petitioner's taxes on the basis of rates applicable to a married person filing a separate return. He imposed the negligence penalty because petitioner filed the returns as joint returns. The following issues remain for our consideration: (1) Whether petitioner filed joint income tax returns for the taxable years 1971 and 1972; and (2) Whether the underpayment of tax, if any, for the years 1971 and 1972 was due to negligence. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Julian E. Parker, Jr. (hereafter petitioner) resided in Fayetteville, N.C., at the time of filing his petition herein. He filed timely *493 income tax returns for the years 1971 and 1972 with the Internal Revenue Service Center, Chamblee, Ga., and the Internal Revenue Service Center, Memphis, Tenn., respectively. The returns purported to be joint returns. The name of petitioner was written in the space entitled "Your signature" and the name of Mary M. Parker was written in the space "Spouse's signature (if filing jointly, BOTH must sign even if only one had income)." Petitioner claimed an exemption for his wife and checked the "Married filing jointly" status. Petitioner's former wife Mary M. Parker (hereafter Mary) did not sign either the 1971 or the 1972 tax return filed by petitioner. It is unknown who actually signed Mary's name, but the name was placed on the return at petitioner's direction. During 1971 and 1972, Mary had no taxable income. Petitioner and Mary were married over 26 years before they were divorced on February 5, 1973. Petitioner left his wife twice in early 1971 before permanently separating from her in July 1971. After leaving Mary, petitioner voluntarily gave her $400 per month, paid the mortgage on the house in which she resided, furnished her a car, and supported their children in *494 college. Petitioner and Mary filed joint income tax returns for each of the 24 years of their marriage prior to 1971 and 1972. Petitioner gathered the information necessary for preparing the returns, took responsibility for their filing, and engaged an accountant to prepare them. During those years, Mary never questioned petitioner's judgment on business matters, including filing tax returns, leaving those matters to petitioner. Mary would only cursorily examine the returns before signing. In May or June 1973, after the divorce decree was final, Mary contacted an accountant to learn her responsibilities for filing tax returns in the future. After telling her accountant she filed a joint return for 1972, the accountant requested her to obtain a copy of the 1972 tax return. After she contacted petitioner's accountant, petitioner agreed to send a copy to Mary. It was at this time Mary realized someone else had signed the return. Mary was upset primarily because someone else had signed her name to the return, not because it was filed as a joint return. Mary then notified the Internal Revenue Service that she had not signed her name nor authorized anyone to sign her name to *495 the returns. Petitioner did not present the 1971 return to Mary for her signature. Mary called petitioner on April 15, 1972, to ask if she had to sign the return. Petitioner told her it was not required because they were living apart. At that time Mary still trusted petitioner to take care of all the business matters. Mary expected petitioner to file a joint return for that year. She intended to file a joint return for 1971 and objected later only to someone signing her name to the return, not to the filing of a joint return. Had petitioner asked Mary to sign the 1971 return, she would have done so, although not without first reading it.
Petitioner continued to support Mary in 1972. However, Mary would not have signed the 1972 return under any circumstances due to animosity generated by the divorce, but not for fear of any liability nor desire to avoid the benefits of a joint return. Petitioner never called or talked with Mary about the 1972 return. Mary called petitioner's accountant on other matters while the accountant was preparing the 1972 return. Although during the conversation Mary was advised that the 1972 return was being prepared, she never commented on it. *496 OPINION It is well established that failure of one spouse to sign a return will not preclude the treatment of it as a joint return if both spouses intended such treatment at the time the return was filed. ; , affd. ; . This intent may be inferred from the acquiescence of the nonsigning spouse. Since in this case it is respondent that is asserting no joint return was intended and because Mary did not sign the return, the burden of proof rests on petitioner to show joint filing status. [2]
*497 It is important to note at the outset what this case is not about. Respondent's sole witness, petitioner's former wife, is not attempting to avoid personal liability for any deficiency based upon a joint return. Cf. Rather, she was upset that someone else had signed her name on the returns. Respondent argues that Mary never intended to file returns for 1971 or 1972; that Mary would have signed the returns, if at all, only because she felt she was required to because she was married to petitioner; that she did not believe she was personally required to file a return because she had no income. This argument, however, fails to take into account Mary's total dependence on petitioner to take care of business and tax matters in any manner he wished. It seems to us proper to look only to the relationship between the parties at the time the returns were filed. If Mary either intended to file jointly or acquiesced to the filing of the returns at the time petitioner filed, she cannot later disavow the returns, at least not without the presence *498 of special circumstances, such as duress, not present here. Cf. Throughout 1971, petitioner financially supported Mary and in April 1972, Mary still trusted petitioner to take care of her interests. She called petitioner to ask if she had to sign the 1971 return, and she expected petitioner to file a joint return for that year. That she did not participate in its preparation was normal for their relationship and past practice. Had petitioner asked Mary to sign the 1971 return, she would have done so. This is not changed by the fact that Mary might have read the return through, although in the past she had never done so. It is fair to conclude from this evidence that Mary acquiesced to the filing of the joint return for 1971. The 1972 return presents a more difficult case because Mary would have refused to sign the return if petitioner had presented it to her. However, an outright refusal to sign a return by a spouse does not preclude a finding that a joint return was intended where the refusal was due to motives wholly unrelated *499 to the filing of the return (i.e., its burdens or benefits), at least where there has been an established pattern of filing joint returns in the past and the nonsigning spouse has never participated in the preparation of prior returns. , affd. . Although the case at bar is distinguishable from Federbush and presents a factual pattern on which no case is directly on point, we believe that the 1972 return should also be considered a joint return. We are persuaded that Mary had no intention that the 1972 return should actually be different from the returns filed for other years, and, therefore, acquiesced in petitioner's filing a joint return. At trial, Mary stated that she would not have signed the 1972 return, but this is the only evidence in the record to indicate that Mary at any time opposed or resisted the idea of making and filing joint returns. Yet,when asked by her accountant about the 1972 return in June 1973, Mary stated it was a joint return thus indicating her belief that a joint return was filed. Moreover, Mary took no steps to prevent petitioner from filing jointly *500 until she discovered someone else had signed her name. She never protested to either petitioner or his accountant that she did not want a joint return, although she knew the returns were being prepared as they consistently had been in the past. There is, moreover, some evidence in the record to indicate that Mary believed a joint return was required of all married couples, thus supporting petitioner's position that she acquiesced to joint filing. The fact that she misunderstood the law would not affect her intent to have a joint return, and would not present a circumstance which would permit a spouse from later disavowing a prior acquiescence. Mary's desire not to sign the 1972 return was due to her animosity toward petitioner because of the divorce and because her relationship with petitioner had terminated.It was not due to her lack of knowledge of petitioner's activities, although by April 1973 it is clear that Mary no longer trusted petitioner to look after her interests. Mary was upset, justifiably, because someone else had signed her name to the return, but not because the return was filed jointly. She contacted the Internal Revenue Service not to protect herself against *501 joint liability but rather to find out who signed the return and possibly to cause trouble for petitioner. The contact was belatedly made long after she knew that the return was filed as a joint return, and as an afterthought not related to the return itself. Because we have determined that the returns in issue were joint returns, there is no basis for applying the negligence penalty. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the taxable years in issue.↩
2. In many cases, it has been held that where a spouse files a joint return, without objection from the nonsigning spouse, who fails to file a separate return, it will be presumed the joint return was filed with the tacit consent of the nonsigning spouse. However, as both parties herein agree, this rule applies only when the respondent seeks to impose liability upon a nonsigning spouse and thus represents only the presumption of correctness attaching to respondent's determination that a joint return was in fact intended. Thus, in this case, there is a presumption against Mary's tacit consent to file joint returns. ↩