HERMAN KLAYMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; SHIRLEY KLAYMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klayman v. Commissioner
Docket Nos. 1391-74, 4694-74 1563-74[1]
United States Tax Court
T.C. Memo 1979-408; 1979 Tax Ct. Memo LEXIS 113; 39 T.C.M. (CCH) 277; T.C.M. (RIA) 79408; September 27, 1979, Filed Thomas B. Rutter and Sara E. Steinbock, for the petitioners in Docket Nos. 1391-74 and 4694-74. Benjamin S. Ohrenstein, for the petitioner in Docket *114 No. 1563-74.
Paul J. Sude, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners Herman and Shirley Klayman's income tax as follows: [2]
Year
Deficiency
1967
$18,990.61
1968
16,718.56
1969
15,389.14
1970
17,461.30
By amended answers filed in Docket Nos. 1391-74 and 4694-74, respondent asserted additional deficiencies against petitioner Herman Klayman as follows: Year
Deficiency
1967
$ 7,960.06
1968
8,674.77
1969
10,011.57
1970
11,900.66
Due to concessions by the parties, the issues for decision are: 1. Whether petitioner Herman Klayman's income tax liability for 1967 through 1970 should be calculated using the rate of tax for married persons filing jointly? Specifically, whether the income tax returns filed by Herman Klayman (but not signed by Shirley Klayman) constitute joint returns within the meaning of section *115 6013. [3]
2. If Herman and Shirley Klayman filed joint returns, whether petitioner Shirley Klayman is entitled to relief from liability for 1967 and 1968 as an innocent spouse under the provisions of section 6013(e). [4]
*116 FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time they filed their petitions, petitioners Herman Klayman and Shirley Klayman were residents of Pennsylvania. Shirley and Herman were married on April 3, 1949; during the years in issue they resided together as husband and wife. Herman and Shirley were separated in August 1971 and were divorced on May 16, 1977. Federal income tax returns bearing the names of both Herman and Shirley were filed for the years 1967 through 1970. Each of these returns bears a signature for Herman Klayman and Shirley Klayman, and on each return the filing status "married filing joint return" was checked. However, Herman signed both his and Shirley's names to each of these income tax returns. During the early years of petitioners' marriage, until 1964 or 1965, Shirley signed the joint income tax returns prepared for petitioners. In 1964 or 1965 this practice changed and Shirley no longer signed the returns. The first year that she did not sign the return, Herman signed it for her with her express authority. In subsequent years, Herman simply signed the returns without requesting *117 her consent. At the time Herman signed the income tax returns for both himself and Shirley, she was not ill, injured or otherwise incapacitated. She was also not absent from this country. No statements were attached to the returns indicating that Shirley was unable to sign for herself. When Herman filed income tax returns for the years in issue, he intended to file joint returns. Shirley never refused or declined to sign a joint federal income tax return prepared in the names of herself and Herman during the ten years preceding their 1971 separation. She never informed Herman that she would not be willing to sign a joint return. In fact, she knew he was filing income tax rreturns and assumed that he filed "as a married man." For the most part, Shirley did not concern herself with the filing of tax returns but assumed that her husband was taking care of this. If Herman had presented any of the income tax returns for 1967 through 1970 to Shirley, she would have signed the returns. [5]
*118 On the tax returns for 1967 through 1970, Herman Klayman reported gross income as follows: Year
Gross Income
1967
$ 40,603.23
1968
53,647.81
1969
66,615.54
1970
91,482.00
During the years in issue, Shirley received small fees from friends for whom she performed calligraphy services. However, these fees never amounted to more than $500 in any one year and she incurred related expenses in excess of the fees received. Herman paid all of Shirley's calligraphy expenses, and she used the fees earned to purchase clothing. Shirley also had some stock which earned dividends of approximately $12 per year and had a savings account which earned a small amount of interest. When Herman completed their joint income tax returns for the years in issue, he never asked her about her income from calligraphy, dividends or interest. However, Herman knew that Shirley's calligraphy expenses exceeded her income therefrom. He did not know about Shirley's stock or savings account. None of the income which Shirley earned appears on the returns filed for 1967 through 1970. After Herman and Shirley separated in 1971, they became embroiled in acrimonious divorce and non-support *119 proceedings. At a support hearing in 1973, Shirley testified that she and Herman had filed joint income tax returns since they were married. In November 1973 and April 1974 respondent issued notices of deficiency to Herman and Shirley as follows: Year
Deficiency
1967
$18,990.61
1968
16,718.56
1969
15,389.14
1970
17,461.30
Upon receipt of the notice of deficiency, Shirley became emotionally distraught. At that time she had minimal financial resources and was unable to suport herself; she was unable to pay her real property taxes or otherwise repair the house in which she lived. Shirley feared that if she had to pay the income taxes shown in the notices of deficiency she would also lose her home. As a result, on June 2, 1974, she wrote a letter to the Commissioner of the Internal Revenue Service in Washington, D.C., in which she explained that she and her husband had filed joint tax returns during all of the years of their marriage, and she requested relief from assessment of the tax. After Shirley received no response to her letter from respondent, she filed an amended petition with this Court on October 31, 1974. She claimed in her amended petition *120 that she should be relieved of this tax liability. This amended petition was prepared for her by her divorce attorney. The amended petition states: "Husband or husband's agent without Petitioner's consent or knowledge forged Petitioner's signature on said income tax returns." This language was drafted by her attorney as a result of his conversation with Shirley at that time. Shirley told her attorney that she had not signed the returns and that she had not authorized anyone else to sign for her. Shirley used the word "forged" in her discussion with her attorney, but by this term she meant only that someone else had signed her name. She did not discuss with her attorney the definition of the word "forged." Similarly, her attorney did not explain to her various types of consent. Her attorney never asked her whether she would have signed the returns if Herman had presented them to her for signing. In an amended answer filed November 6, 1975, respondent asserted that Shirley's signature was forged by Herman. Accordingly, respondent asserted that Herman's tax liability for each year should be computed under the married filing singly rates. By stipulation, Herman has agreed *121 that his income for these years should be increased to reflect his distributive share of partnership income from the Isadore, Herman and Benjamin Klayman partnership and to reflect preferential dividends from I. Klayman and Co., Inc., as follows: Year
Part. Dist.
Dividends
1967
$18,638.17
$9,741.95
1968
15,820.83
5,564.07
1969
13,535.67
4,620.02
1970
13,091.85
7,686.91
Herman also agreed that he was not entitled to a work clothes deduction of $350 in each of the years 1967, 1968 and 1969. ULTIMATE FINDING OF FACT Herman and Shirley Klayman intended to file joint income tax returns for all the years in issue. OPINION The first issue for decision is whether petitioner Herman Klayman's tax liability for 1967 through 1970 should be calculated using the rate of tax for married persons filing jointly. Specifically, we must decide whether the income tax returns filed by Herman (but not signed by Shirley) constitute joint returns within the meaning of section 6013.
Section 6013(a) provides, with certain exceptions not relevant here, that a husband and *122 wife may jointly make a single income tax return, even though one of the spouses has neither gross income nor deductions. In general, a joint return must be signed by both spouses. Section 1.6013-1(a)(2), Income Tax Regs. In this case, it is undisputed that Shirley did not sign the income tax returns filed by Herman as joint returns for 1967 through 1970. Nonetheless, it is well settled that if an income tax return is intended by both spouses as a joint return, the absence of the signature of one spouse does not prevent their intention from being realized. Estate of Campbell v. Commissioner,56 T.C. 1, 12 (1971); Federbush v. Commissioner,34 T.C. 740, 757 (1960), affd. per curiam 325 F. 2d 1 (2d Cir. 1963); Kann v. Commissioner,18 T.C. 1032 (1952), affd. 210 F. 2d 247 (3d Cir. 1953), cert. denied 347 U.S. 967 (1954). The question of the spouses' intentions is one of fact. Estate of Campbell v. Commissioner,supra;Lane v. Commissioner,26 T.C. 405, 408 (1956). In this case, since respondent raised this issue in his *123 amended answer, respondent concedes that he bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. In essence, respondent must establish that petitioners did not intend to file joint returns for the years in issue. We conclude that respondent has failed to carry his burden here. Indee, we believe that the evidence in this case supports the conclusion that petitioners intended to file joint returns, and we have so found in our ultimate finding of fact. In reaching this conclusion, we have relied on several facts. In the first place, throughout her marriage to Herman, Shirley depended on him to file tax returns. Although she signed these returns during the early years of their marriage, her signing was a mere ritual. See Estate of Campbell v. Commissioner,supra at 12-13. Eventually Herman signed a return for her with her express approval, and then he simply signed the returns without even seeking her approval. When Shirley thought about income taxes, however, she knew that Herman was filing the returns and she believed that such returns were joint returns. Second, Shirley never objected to Herman filing joint income tax returns. *124 Third, if Herman had asked Shirley to sign the returns at issue here, she would have signed them. She believed this was her duty, and she also did not want to confront Herman and thereby "rock the boat" in an increasingly shaky marriage. Fourth, Herman clearly intended these returns to be joint returns and filed them as such. We conclude that Shirley entrusted the filing of tax returns for the couple to Herman, and he annually filed income tax returns which both spouses intended to be joint returns. Nonetheless, respondent points to several facts which, he contends, establish that Shirley did not intend to file a joint return. First, respondent asserts that none of Shirley's income from calligraphy, dividends or interest was included in the returns filed by Herman. Because her income was not included, respondent argues that this case is distinguishable from Howell v. Commissioner,10 T.C. 859 (1948), affd. per curiam 175 F. 2d 240 (6th Cir. 1949), Ladden v. Commissioner,38 T.C. 530 (1962), and Heim v. Commissioner,27 T.C. 270 (1956), affd. 251 F. 2d 44 (8th Cir. 1958), which are all cases in *125 which we found that the parties intended to file joint returns. We conclude, however, that respondent's argument is misplaced on the facts. We found that Shirley had no "net earnings" from calligraphy, since her calligraphy expenses exceeded the fees she earned. As to the dividends and interest earned, these were apparently small in amount and unknown to Herman. His failure to report this small amount of income during the years in issue was due to lack of knowledge, not an intention (on behalf of either him or Shirley) not to file joint returns. Second, respondent relies on the statement in Shirley's amended petition to the effect that her signature was forged and that she had not consented to file joint returns. However, this statement can only be understood in the context in which Shirley made it. At the time she filed her amended petition, Shirley was involved in acrimonious divorce and support proceedings with Herman. She was in a state of both financial and emotional distress. It was in this context that she received the notices of deficiency, which claimed a tax liability far in excess of her financial resources. Shirley first wrote to respondent and, after stating *126 that she had filed joint returns for the years in issue, asked whether she could be relieved of liability.When no answer was forthcoming, she sought legal advice. Her attorney drafted this amended petition, using her terms "forgery" and "consent." However, Shirley did not use either term in its legal sense, and her attorney never asked her whether she would have signed the joint returns had they been presented to her. On the basis of these facts, we conclude that Shirley's amended petition is not indicative of her intent at the time the returns were filed. The election to file joint returns is not revocable, and the key inquiry is as to the spouses' intentions at the time the return is filed. Ladden v. Commissioner,38 T.C. 530, 533-534 (1962). Here, the evidence leads us to the conclusion that Shirley intended these returns to be joint returns, and she only renounced this intent in light of the divorce proceedings and her financial condition after she and Herman separated. Third, respondent contends that if Shirley would have signed the returns, she would have signed them only under duress. *127 It is well settled that a return signed under duress is not a valid joint return. Brown v. Commissioner,51 T.C. 116 (1968). However, the facts do not support respondent's assertion. Shirley testified that she would have signed the returns if her husband presented them to her because it was her obligation and because she worried that her refusal to do so would lead to further domestic strife. In Brown v. Commissioner,supra, we stated that duress exists only when the taxpayer was unable to resist demands to sign the return and when she would not have signed the returns except for the constraints upon her. 51 T.C. at 119. Here, the facts establish neither that Shirley would not have signed the returns nor that Herman would have presented her with irresistible demands. Rather, it is clear that Shirley would have signed the returns as part of her legal and marital obligations. Respondent also raises two legal arguments as to why the returns filed by Herman should not be considered joint returns. Respondent contends, first, that petitioners failed to comply with the applicable regulations. Section 1.6013-1(a)(2), Income Tax Regs. *128 , provides that joint returns "shall be signed by both spouses." Respondent asserts that Shirley's failure to sign the returns, when she was capable of doing so, is fatal to petitioners' contention that the return is a valid joint return. This argument is utterly devoid of merit. Respondent's argument ignores the multitude of cases in which courts have held that a joint return is valid as such despite the absence of the signature of one spouse. Estate of Campbell v. Commissioner,supra;Kann v. Commissioner,supra;Federbush v. Commissioner,supra;Heim v. Commissioner,supra;Ladden v. Commissioner,supra;Lane v. Commissioner,supra.Whether a return is to be treated as a joint return depends on the intention of the spouses, not the presence of their signatures. Respondent's second legal argument is related to the first. Respondent contends that the doctrine of tacit consent, pursuant to which we have upheld determinations that a joint return is valid even if not signed by both spouses, applies only in situations in which respondent has determined *129 that the return is a joint return. Respondent contends that he can rely on this doctrine to determine that an unsigned return is a joint return, but that taxpayers cannot rely on a theory of tacit consent to support their claim that an unsigned return is a joint return. In essence, respondent argues that a taxpayer cannot prove that one spouse tacitly consented to the other spouse's filing of a joint return. In support of this position, respondent relies on Hennen v. Commissioner,35 T.C. 747 (1961), and Parker v. Commissioner,37 T.C.M. 144, 47 P-H Memo. T.C. par. 78,023 (1978). Again, respondent's position is without merit. Although Hennen v. Commissioner,supra, does contain language to the effect that the presumption of tacit consent has been applied only upon a determination by respondent, we also stated in Hennen that the tacit consent presumption is only an explanation of the basis for respondent's determination. We held in Hennen that the taxpayer cannot rely on a presumption of tacit consent if respondent determines that no such consent existed. Rather, in such situations the taxpayer must prove *130 that tacit consent existed. Similarly, in Parker v. Commissioner,supra, we held that the presumption of tacit consent was inapplicable when respondent determined that a return was ot joint, but the taxpayers were able to prove that one spouse tacitly consented to the filing of joint returns by the other. Indeed, Parker v. Commissioner supports a conclusion directly contradictory to the position respondent has adopted here. See also Lane v. Commissioner,26 T.C. 405 (1956) (taxpayer proved that an unsigned return was a joint return). [6] In this case, respondent does not have the benefit of the presumption of correctness. Compare Hennen v. Commissioner,supra.However, in reaching our conclusion that petitioners filed joint returns, we have not relied on a presumption of tacit consent; petitioners proved that they intended to file joint returns. We hold that the returns filed by Herman Klayman for the years 1967 through 1970 were intended to *131 be joint returns under the provisions of section 6013(a). Accordingly, we conclude that Herman's income tax liability for these years should be calculated using the rate of tax for married persons filing jointly. The next issue is whether Shirley Klayman is entitled to relief from liability for 1967 and 1968 as an innocent spouse under the provisions of section 6013(e). [7]Section 6013(e) allows a spouse to be relieved of liability for tax if the spouse satisfies the three provisions of the section. Respondent contends that Shirley does not qualify as an innocent spouse because she has failed to prove that the amount omitted from gross income was "in excess of 25 percent of the amount of gross income stated in the return." Section 6013(e)(1)(A). Shirley, on the other hand, contends that she has satisfied all the requirements of section 6013(e). The spouse claiming the protection of section 6013(e) bears the burden of proving that all the requirements of the section have been satisfied. Allen v. Commissioner,61 T.C. 125 (1973), revd. on other grounds, 514 F. 2d 908 (5th Cir. 1975); *132 Sonnenborn v. Commissioner,57 T.C. 373 (1971). *133 In support of her contention that the amounts omitted from gross income in 1967 and 1968 were in excess of 25 percent of the amount of gross income stated in the return, Shirley points to the fact that the partnership distributions and preferential dividends which Herman did not report during those years exceed 28 percent of the total gross income which he reported on their joint income tax returns. Shirley's argument is to no avail, however, because the "amount of gross income stated in the return" is determined, where a partner of a partnership which has filed an information return is concerned, by reference to the total gross income of both the individual and partnership returns. Estate of Klein v. Commissioner,63 T.C. 585 (1975), affd. 537 F. 2d 701 (2d Cir. 1976), cert. denied 429 U.S. 980 (1976); Walker v. Commissioner,46 T.C. 630 (1966). In this case, the partnership returns were not placed into evidence. We do not know the amount of gross income reported on those returns and, thus, it is impossible to determine *134 the "amount of gross income stated in the return" for purposes of the 25 percent test of section 6013 (e)(1)(A). Since petitioner bears the burden of proof, we conclude that she has failed to prove that she is entitled to relief from liability as an innocent spouse. Decision will be entered under Rule 155.
Footnotes
1. These cases have been consolidated for purposes of trial, briefing and opinion.↩
2. These consolidated cases concern petitioner Herman Klayman's income tax liabilities for 1967 through 1970. With respect to petitioner Shirley Klayman, only her income tax liability for 1967 and 1968 is before us.↩
3. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
4. Petitioner Herman Klayman and respondent have settled all issues raised in the notices of deficiency. In particular, the parties have agreed that Herman Klayman is not entitled to a work clothes deduction for 1967, 1968 and 1969, and the parties have agreed to the amounts of preferential dividends from I. Klayman and Co., Inc., and additional distributions from the Isadore, Herman and Benjamin Klayman partnership which Herman Klayman must include in income for each of the years in issue. The sole issue with respect to Herman Klayman's tax liability is the rate of tax to be imposed. Although Shirley Klayman has not reached such agreement with respondent, respondent does not contend that her liability exceeds the liability of Herman Klayman. Therefore, the amount of petitioner Shirley Klayman's tax liability is not at isue herein except to the extent that she claims that she has no liability in 1967 and 1968 because she is an innocent spouse within the meaning of section 6013(e)↩.
5. If Herman had asked her to sign the returns, Shirley testified she would have signed them because she felt it was her obligation to sign them and because she did not wish to create additional domestic strife. Shirley and Herman's marriage was "rocky," and she did not wish to take any action which would make her home life less secure.↩
6. Respondent's position here contradicts his previous acquiescence in our decision in Lane v. Commissioner, supra. See 1956-2 C.B. 7↩.
7. Section 6013(e) provides: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special rules.--For purposes of paragraph (1)--
(A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A).↩